**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------×

Joel Guerrero, Mike Moise, Jose Diaz,
Muhammed Sesay, Junior Janvier, and Omar
Jerome, on behalf of themselves and others
similarly situated,

        *Plaintiffs,*

         *v.*

GoPuff, GoBrands, Inc.,
Yakir Gola, Rafael
Ilishayev, and GB Logistics
LLC,

        *Defendants.*

------------------------------------------------×

<u>**AMENDED COMPLAINT**</u>

**1:24-cv-6727**

<u>**JURY REQUESTED**</u>

Plaintiffs Joel Guerrero, Mike Moise, Jose Diaz, Muhammed Sesay, Junior Janvier, and

Omar Jerome ("Plaintiffs"), by their counsel, Harman Green PC, allege for their Amended

Complaint against Defendants GoPuff, GoBrands, Inc., Yakir Gola, Rafael Ilishayev, and GB

Logistics LLC ("Defendants") as follows:

<u>**PRELIMINARY STATEMENT**</u>

1. This case is about rampant failure to pay owed wages, rampant failures to pay

minimum wage, and misclassification of employees.

2. Defendants are one in the same, operating as the delivery service 'GoPuff' and are,

in all things, joint employers and/or wholly owned by one or another.

3. This case is brought as a collective action under the Fair Labor Standards Act

("FLSA") and the New York State Labor Law ("NYLL") because the number of Putative Plaintiffs

affected far exceeds a reasonable number for which this Court could handle as individual matters.

Further, the claims and defenses to underpayment of wages and misclassification of employment

status would be identical between all Plaintiffs as there is a common illegal practice by only one

corporation (and it's subsidiaries, owners, and direct corporate lineage, making them one and the

1

same).  Plaintiffs intend to move for certification as a collective action pursuant to Section 216(b) of the FLSA.[1]

## JURISDICTION

4.      Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

5.      Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State and local law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

6.      Any agreements challenging this Court's jurisdiction are defective on their face and unenforceable both at law and in equity.

## PARTIES

7.      Plaintiff Joel Guerrero was and is a resident of New York.

8.      Plaintiff Mike Moise was and is a resident of New York.

9.      Plaintiff Jose Diaz was and is a resident of New York.

10.     Plaintiff Muhammed Sesay was and is a resident of New York.

11.     Plaintiff Omar Jerome was and is a resident of New York.

12.     Plaintiff Junior Janvier was and is a resident of New York.

13.     All Plaintiffs named in this action worked in and were employed in New York City.

14.     Defendant GoPuff is headquartered in Philadelphia, at 537 N 3rd St, Philadelphia, PA 19123, but operates throughout the entirety of Manhattan (the basis for venue) and all of New York City.

15.     Defendant GoBrands, Inc wholly owns GoPuff and is also located at 537 N 3rd St, Philadelphia, PA 19123.

16.     Defendant Yakir Gola, upon information and belief, was and is a resident of

---

[1] Plaintiffs will not be moving for any class certification under Fed. R. of Civ. Pro. 23.

Pennsylvania.

17.    Defendant Rafael Ilishayev, upon information and belief, was and is a resident of Pennsylvania.

18.    GB Logistics, LLC is a holding company affiliated directly and intimately with GoPuff, and is located at 454 N 12TH ST, Philadelphia, Pennsylvania, United States.

## CLASS CONTEMPLATED

19.    Plaintiffs intend to move for collective certification under the FLSA.  Plaintiffs believe that all delivery drivers for Defendants, who are employed within the United States, are paid illegally as independent contractors and are not paid a minimum wage.

20.    At present, Plaintiff identifies the class as all delivery drivers for Defendants who reside and/or deliver for Defendants in New York City.  Plaintiffs believe that the class is much larger, and encompasses delivery drivers in the entirety of New York State and, in fact, delivery drivers in many other states.[2]

21.    In fact, in online reviews, and publications by various states as to Defendants' illegal pay practices, it is clear Defendants' illegal pay practices are diffused across every location they operate in.

22.    The individual circumstances of each Putative Plaintiff do not outweigh the questions and answers common to them all.  The only individual aspect to any claim is the amount of wages owed to each Putative Plaintiff.

23.    The overarching question is 'whether Putative Plaintiffs were improperly listed as independent contractors and whether Defendants failed to pay Putative Plaintiffs an hourly rate.'

24.    The collective Putative Plaintiffs have common questions of fact to all.  Defendants failed to pay minimum wage, Defendants failed to pay overtime wages, and Defendants

---

[2] Defendants operate in over half of the States in the continental United States, https://www.gopuff.com/delivery/us.

misclassified employees to avoid paying them the federal minimum wage and to avoid paying overtime.

25.     It would flood and burden this Court to hear each Putative Plaintiff's claim individually, of which there are likely hundreds, if not thousands.  GoPuff employs approximately 10,000 people, a great many of whom are delivery drivers.[3]

**JURY DEMAND**

26.     Plaintiffs respectfully request a trial by jury.

**STATEMENT OF FACTS**

27.     Plaintiff Guerrero has been a delivery driver for Defendants for over three years.

28.     Plaintiff Diaz has been employed by Defendants for over two years.

29.     Plaintiff Moise was previously employed by Defendants as late as 2023.

30.     Plaintiff Sesay was employed by Defendants for approximately two years.

31.     Plaintiff Jerome has been employed by Defendants for nearly three years.

32.     Plaintiff Janvier is employed by Defendants.

33.     Defendants are a delivery service with a long history of illegal employment practices.

34.     Defendants Yakir Gola and Rafael Ilishayev are individuals liable under the FLSA, operate GoPuff and all affiliates as one and the same, and have ultimate control and discretion on how and when employees are paid.

35.     Defendants routinely violate the law, and rely extensively on undocumented employees to work as delivery drivers.

36.     Defendants utilize these employees because Defendants can control them and can

---

[3] GoPuff authorizes delivery drives, but, as well, turns a knowing blind eye to these authorized drivers who allow unauthorized drivers who get paid 'off the books' by using their credentials.  GoPuff knowingly allows this to drive costs down.

force them to accept a lower wage than the law requires.

37.    As well, upon information and belief, not all Putative Plaintiffs signed any paperwork to commence their employment.

38.    The following picture shows an employee for Defendants logging into multiple phones to perform work:



39.    Plaintiff Guerrero is a natural born American citizen, and has been personal witness to this illegal practice.

40.    The class, then, would encompass both citizens and undocumented employees, as both are paid far below minimum wage.

•    The following is true with respect to all Plaintiffs and Putative Plaintiffs.

41.    Plaintiffs and the class members are also improperly paid as independent contractors, on a 1099, but they are, in all things, employees of Defendants.

42.    Plaintiffs work, at times, over twelve hours a day delivering for Defendants.

43.    Defendants, in 2023, were fined $6.2 million by the State of Massachusetts for

"misclassifying employees as independent contractors, failing to furnish suitable paystubs, and failing to maintain an earned sick leave policy. In total, 968 employees will be impacted."[4]

44.     Defendants completely control Plaintiffs' work responsibilities and obligations. They are, in all things, employees.

45.     The contracts forming the basis for employment are not for a duration and specify no limitations as to time.

46.     The contracts forming the basis for employment operate as at will employment contracts, and even require a notice period before their cancellation.

47.     Customers to Defendants are not entitled to choose which delivery driver deliver their purchases.

48.     Defendants maintain all pay records for Plaintiffs.

49.     Defendants maintain all address records for customers.  Plaintiffs can offer no repeat business to customers without Defendants.

50.     Defendants track, and share with third parties, each Plaintiff's location during their deliveries.

51.     Plaintiffs would not be able to earn income without Defendants' customers, without Defendants' administrative support, and without Defendants' name branding.

52.     Plaintiffs do not hold themselves out as independent contractors, but, rather, operate as 'GoPuff Drivers.'

53.     Plaintiffs do not operate in their own interest and do not exercise entrepreneurial control over important business decisions when delivering items for Defendants.

54.     Defendants do not allow Plaintiffs to hire assistants to perform their work for them

---

[4] Office of the Attorney General for the State of Massachusetts, *AG's Office Issues $6.2 Million in Citations Against National Delivery Service Company Over Employee Misclassification Violations*, March 30, 2023, https://www.mass.gov/news/ags-office-issues-62-million-in-citations-against-national-delivery-service-company-over-employee-misclassification-violations.

because Defendants sell alcohol and other age restricted products.

55.    If Plaintiffs have any doubt as to whether a person is old enough to purchase a particular product, they do not have independent discretion making authority, as they are directed to contact a General Manager to determine whether the customer is of age.

56.    In fact, "under no circumstances, shall a driver enter their own identification to clear restrict product delivery to a customer."

57.    Plaintiffs have no discretion to sell products to underage persons (not that they would intend to) because Defendants are being held out as masters of the employment relationship, and anticipate liability should the delivery driver make an error in delivering an age restricted product.

58.    Plaintiffs are employees, evidenced by the fact that when a product leaves Defendants' store, it remains Defendants' product for all purposes up through delivery to the customer.  At no time are any Plaintiffs operating outside of Defendants' directives to make deliveries.

59.    Defendants have very restrictive, very detailed instructions on how Plaintiffs must deliver all items, and, in particular, age restricted items.  Deviation from the instructions "may result in immediate termination of the relationship" between Defendants and Plaintiffs.

60.    Plaintiffs, on average, make less than $10 per hour, inclusive of tips.

61.    Plaintiffs, at times, make approximately $3 per hour not including tips.

62.    Plaintiffs are never paid overtime.

63.    Plaintiffs are not even paid a living wage, let alone the minimum wage.

64.    For example:

65.    For the week of April 1-7, 2024, Plaintiff Guerrero earned $249.27 for 43.30 hours of work.  His base pay was $87.74, and he received $161.53 in tips.

66. For the week of April 15-21, 2024, Plaintiff Guerrero earned $626.17 for 96.04 hours of work. His base pay was $208.12, and he received $418.05 in tips.

67. For the week of April 29-May 5, 2024, Plaintiff Guerrero earned $530.90 for 82.71 hours of work. His base pay was $176.64, and he received $354.26 in tips.

68. For the week of May 6-12, 2024, Plaintiff Guerrero earned $414.60 for 79.84 hours of work. His base pay was $138.94, and he received $275.66 in tips.

69. For the week of May 13-19, 2024, Plaintiff Guerrero earned $347.41 for 61.82 hours of work. His base pay was $116.57, and he received $230.84 in tips.

70. A particularly 'good' work week for Plaintiff Guerrero would be something like October 2-8, 2023, which earned Plaintiff $549.67 for 49.20 hours worked, $260.33 of which was in tips.

71. A particularly 'bad' week was October 23-29, 2023, which earned Plaintiff Guerrero only $91.11 for 21.75 hours of work, $33.45 of which was paid by Defendants as base pay.

72. Below is a paystub from Plaintiff Guerrero's GoPuff Driver app:

8



73.    <u>Every single pay week for Plaintiffs reflects this illegal activity</u>.    All named Plaintiffs here can show the same illegal pay scheme.

74.    Defendants slate Plaintiffs as always working "unscheduled" hours to justify their illegal practices.

75.    For example, Plaintiff Janvier experienced frequent periods of "down time" when Defendants would have Plaintiff Janvier wait for work in a "cattle call."

76.    The same is true for Plaintiff Guerrero and the other named Plaintiffs.

77.    Being stuck in cattle calls for work trips do not serve the Plaintiffs' interests as 'businesspersons,' demonstrating that they are employees waiting for assignment.

78.    Plaintiffs are 'unskilled workers' who add no additional input but their labor and time.

79.    The following is a photo evidencing this cattle call practice as employees wait for assignment:



80.    When Plaintiffs are put into a delivery queue, they usually wait over half an hour before a delivery trip can begin.  Defendants prioritize providing delivery opportunities to undocumented employees.

81.    Plaintiffs are not paid an hourly rate.

82.    Plaintiffs are paid 'by the trip' and receive a base pay of approximately $3.50 per 'trip.'

83.    Plaintiff Guerrero will sometime stack trips – meaning he will do three or four trips in one route.  Even with stacking, Plaintiff Guerrero is never paid the minimum hourly rate.

84.    Plaintiffs know that there are dozens, if not hundreds, of others in the five boroughs alone that are subjected to these illegal practices.

85.    In fact, on Apple's AppStore, the "Gopuff Driver" app has approximately 1,500 reviews, and over half are one-star reviews, with an extreme abundance of drivers complaining about pay practices, and, specifically, illegal wage violations.

86.    All Plaintiffs believe that Defendants are the sole and only masters of the employment relationship.

87.    Plaintiffs' claims are one and the same as virtually every other GoPuff delivery driver, and such a number is subject to discovery.

## CAUSES OF ACTION
## FIRST CLAIM

**Failure to pay minimum wage under the Fair Labor Standards Act**

88.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

89.    This claim is brought on behalf of the named Plaintiffs and all others similarly situated.

90.    This claim is subject to collective action certification pursuant to Section 216(b) of the FLSA.

91.    Under the FLSA, every employee in the United States is entitled to no less than $7.50/hour.

92.    Defendants routinely violate this, as evidenced by paying Plaintiff Guerrero only $33.45 for 21.75 hours of work for the week October 23-29, 2023.

93.    Defendants do not pay any named Plaintiff a minimum wage.

94.    As this failure to pay minimum wage is willful and malicious, and intentional, Defendants must be ordered to pay Plaintiffs and similarly situated class members all minimum wage owed, all liquidated damages available, any emotional distress associated with the claims, and all attorney fees, costs, and expenses, as well as any other remedy available in law.

## SECOND CLAIM

**Failure to pay minimum wage under the New York Labor Law**

95.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

96.    This claim is brought on behalf of the named Plaintiffs and all others similarly situated.

97.    Under the New York Labor Law, through December 31, 2022, all New York

City employees were entitled to $15.00. Beginning January 1, 2024, they were entitled to $16.00. Tipped service employees were required to be paid $13.35 Cash Wage and $2.65 Tip Credit.

98.     Defendants routinely violate this, as evidenced by paying Plaintiff only $33.45 for 21.75 hours of work for the week October 23-29, 2023.

99.     As this failure to pay minimum wage is willful and malicious, and intentional, Defendants must be ordered to pay Plaintiffs and similarly situated class members all minimum wage owed, all liquidated damages available, any emotional distress associated with the claims, and all attorney fees, costs, and expenses, as well as any other remedy available in law.

## THIRD CLAIM

### Failure to pay overtime

100.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

101.    This claim is brought on behalf of Plaintiffs and all others similarly situated.

102.    The FLSA, New York Labor Law, and New York City local laws all demand that employees be paid 150% their base rate for all work completed in excess of 40 hours per week.

103.    Defendants do not have a base rate for employees, so the rate must be at least $16.00 for New York City employees. All class members are entitled to $24.00 per hour of work completed beyond 40 hours per week.

104.    Defendants do not pay any overtime despite employees working in excess of forty hours per week, as evidenced by the week of April 15-21, 2024 when Plaintiff Guerrero earned only $626.17, of which only $208.12 was paid by Defendants as a 'base pay,' for 96.04 hours of work. At 96.04 hours, Plaintiff Guerrero should have earned $2,426.61 for that week

13

alone in only base pay, before tips are included.  Indicative of how extreme Defendants' illegal practice is, $2,426.61 is more than Plaintiff earned for the month of April 2024.

105.    As this failure to pay overtime wage is willful and malicious, and intentional, Defendants must be ordered to pay Plaintiffs and similarly situated class members all minimum wage owed, all liquidated damages available, any emotional distress associated with the claims, and all attorney fees, costs, and expenses, as well as any other remedy available in law.

## FOURTH CLAIM

**Misclassification of employees under federal and New York State law**

106.    Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 87 with the same force as though separately alleged herein.

107.    This claim is brought on behalf of Plaintiffs and all others similarly situated.

108.    Under the FLSA, 29 CFR Part 795, employees cannot be classified as independent contractors.  New York City has published its own laws governing and explaining what makes an employee or an independent contractor.

109.    Plaintiff and class members are listed as independent contractors and are paid on a 1099-NEC, rather than a w2, which is improper.

110.    This is illegal as Plaintiffs and class members are all employees, and are wholly controlled by Defendants in the same way as other deliver companies control their drivers.

111.    New York State adheres to the Common Law 'right to control' test.

112.    Under that test, Courts look at whether an employer has the right to control aspect of the services rendered.

113.    Defendants knowingly misclassified employees and must be penalized at all levels, including by paying any owed back pay or front pay, and remedy Plaintiffs and class members for any excess tax they paid on their earnings.

14

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory and liquidated damages yet to be determined, punitive damages, attorneys' fees, interest, costs and disbursements to an amount no less than $10,000,000 for all Putative Plaintiffs collectively;

B. For the second cause of action, damages for wages and emotional distress, compensatory and liquidated damages yet to be determined, punitive damages, attorneys' fees, interest, costs and disbursements to an amount no less than $10,000,000 for all Putative Plaintiffs collectively;

C. For the third cause of action, damages for wages and emotional distress, compensatory and liquidated damages yet to be determined, punitive damages, attorneys' fees, interest, costs and disbursements to an amount no less than $10,000,000 for all Putative Plaintiffs collectively;

D. For the fourth cause of action, damages for wages and emotional distress, compensatory and liquidated damages yet to be determined, punitive damages, attorneys' fees, interest, costs and disbursements to an amount no less than $10,000,000 for all Putative Plaintiffs collectively;

E. For certification to proceed as a collective action; and

F. For such other and further relief as the Court deems just and proper.


Dated: New York, NY
November 18, 2024

**HARMAN GREEN PC**

By: _____

Walker G. Harman, Jr.
140 Broadway, Fl 46
New York, NY 10005
(646) 248-2288
wharman@theharmanfirm.com
*Attorney for Plaintiff*