**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Joel Guerrero, Mike Moise, Jose Diaz, Muhammed Sesay, Junior Janvier, and Omar Jerome, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GoPuff, GoBrands, Inc., Yakir Gola, Rafael Ilishayev, and GB Logistics, LLC, <br><br> Defendants. | No. 1:24-cv-06727 (JHR) <br><br><br> Hon. Jennifer H. Rearden |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO COMPEL ARBITRATION AND**
**DISMISS THE AMENDED COMPLAINT**

---

**GREENBERG TRAURIG, LLP**

Jason D. Burns
Shira M. Poliak
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
jason.burns@gtlaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.     RELEVANT FACTUAL BACKGROUND ................................................................... 1

II.    LEGAL STANDARD ................................................................................................ 5

III.   ARGUMENT ............................................................................................................ 6

        A.    The Court Should Compel Arbitration of Plaintiffs' Claims Under the
FAA ......................................................................................................................... 6

             1.    Plaintiff Entered into a Valid Arbitration Agreement. ............................... 6
             2.    All of Plaintiffs' Claims are Covered by the Arbitration
Agreement. ................................................................................................... 7
             3.    Plaintiffs Do Not Fall within the Transportation Worker
Exemption to the FAA ................................................................................ 8

        B.    The Arbitration Provision Is Enforceable Under New York Law. ...................... 11
        C.    Plaintiffs Must Arbitrate Their Claims Against *All* Defendants. ........................ 12

             1.    The Non-Signatory Defendants are Entitled to Enforce the
Arbitration Provision as Third-Party Beneficiaries. ............................... 13
             2.    The Non-Signatory Defendants are Entitled to Enforce the
Arbitration Provision on Estoppel Grounds. ............................................ 13

                  a.    Plaintiffs' Joint Employment Claims Against GB Logistics
and the Non-Signatory Defendants are Factually
Intertwined. ................................................................................. 14
                  b.    Plaintiffs Have Alleged that GB Logistics and the Non-
Signatory Defendants are "Closely Related." ............................. 15

        D.    Plaintiffs Must Arbitrate their Claims on an Individual Basis ............................. 16
        E.    The Arbitration Provision Contains a Valid and Enforceable Delegation
Clause .................................................................................................................. 18
        F.    Plaintiffs' Claims Should Be Dismissed ............................................................. 18

IV.   CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullayeva v. Attending Homecare Servs. LLC*,
928 F.3d 218 (2d Cir. 2019)............................................................................................6

*Alfonso v. Maggies Paratransit Corp.*,
203 F. Supp. 3d 244 (E.D.N.Y. 2016) ............................................................................8

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................................................................................................5, 16

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)............................................................................................6

*AT&T Mobility, LLC v. Concepcion*,
563 U.S. 333 (2011)....................................................................................................5, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)........................................................................................................5

*Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*,
80 N.Y.2d 1031 (1992) .................................................................................................11

*Behm v. Am. Int'l Grp., Inc.*,
No. CV N10C-10-013, 2013 WL 3981663 (Del. Super. Ct. July 30, 2013) ..........................12

*Bissonnette v. LePage Bakeries Park St., LLC*,
601 U.S. 246 (2024)........................................................................................................9

*Black v. JP Morgan Chase & Co.*,
No. 10-848, 2011 WL 3940236 (W.D. Pa. Aug. 25, 2011).............................................17

*Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*,
No. 13-6804, 2014 WL 4802885 (S.D.N.Y. Sept. 18, 2014) .......................................6

*Brewer v. GEM Indus. Inc.*,
No. 14-778, 2015 WL 773800 (N.D.N.Y. Feb. 24, 2015)........................................11, 17

*Chambers v. Maplebear, Inc.*,
No. 21-7114, 2024 WL 3949344 (S.D.N.Y. Aug. 27, 2024).........................................9

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)........................................................................................................8

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)................................................................................................5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)........................................................................................................5

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................................................................................................8, 16

*Fluke v. Cashcall, Inc.*,
No. 08-5776, 2009 WL 1437593 (E.D. Pa. May 21, 2009)......................................................17

*In re Generali COVID-19 Travel Ins. Litig.*,
577 F. Supp. 3d 284 (S.D.N.Y. 2021).....................................................................................13

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987)......................................................................................................5

*Greene v. Subcontracting Concepts, L.L.C.*,
No. 13-1500, 2014 WL 1087999 (S.D.N.Y. Mar. 19, 2014).....................................................15

*HDS Inv. Holding Inc. v. Home Depot, Inc.*,
No. 3968-CC, 2008 WL 4606262 (Del. Ch. Oct. 17, 2008)......................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)...................................................................................................................18

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ..........................................................................................................12

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)...................................................................................................................7

*Lewis v. ANSYS, Inc.*,
No. 19-10427, 2021 WL 1199072 (S.D.N.Y. Mar. 30, 2021)...................................................18

*Litvinov v. UnitedHealth Grp. Inc.*,
No. 13-8541, 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014).......................................................7

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014)..........................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).......................................................................................................................5

*N.F.L. Ins. Ltd. by Lines v. B & B Holdings, Inc.*,
874 F. Supp. 606 (S.D.N.Y. 1995) .............................................................................................7

*Nelson v. Gobrands, Inc.*,
No. 20-5424, 2021 WL 4262325 (E.D.P.A. Sept. 20, 2021).....................................................11

*Ouedraogo v. A-1 Int'l Courier Serv., Inc.*,
No. 12-5651, 2014 WL 1172581 (S.D.N.Y. Mar. 21, 2014)...................................4, 13, 15, 16

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004).....................................................................................................10

*Pick v. Discover Fin. Servs., Inc.*,
No. 00–935, 2001 WL 1180278 (D. Del. Sept. 28, 2001).......................................................17

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010).....................................................................................................13

*Ragone v. Atl. Video at Manhattan Ctr.*,
No. 07-6084, 2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008)....................................................14

*Reid v. Tandym Grp., LLC,*
    697 F. Supp. 3d 62 (S.D.N.Y. 2023)......................................................................14, 15, 17, 18

*Rent–A–Center, West, Inc. v. Jackson,*
    561 U.S. 63 (2010)...................................................................................................................5, 17

*Schatzmann v. Harris Partners Ltd.,*
    No. 21-7301, 2024 WL 1255296 (S.D.N.Y. Mar. 22, 2024)......................................................7

*Sutherland v. Ernst & Young LLP,*
    726 F.3d 290 (2d Cir. 2013).......................................................................................................8

*Sw. Airlines Co. v. Saxon,*
    596 U.S. 450 (2022)...............................................................................................................9, 10

*Torres v. Major Auto. Grp.,*
    No. 13-687, 2014 WL 4802985 (E.D.N.Y. Sept. 25, 2014) ......................................................6

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,*
    363 U.S. 574 (1960)....................................................................................................................5

*Valdes v. Swift Transp. Co., Inc.,*
    292 F. Supp. 2d 524 (S.D.N.Y. 2003).......................................................................................10

*Valdez-Mendoza v. Jovani Fashion Ltd.,*
    No. 15-7261, 2017 WL 519230 (E.D.N.Y. Feb. 8, 2017) ........................................................14

*Viking Pump, Inc. v. Century Indem. Co.,*
    No. CIV.A. 10C-06141FSS, 2012 WL 1415933 (Del. Super. Ct. Mar. 7, 2012)....................11

*Wallace v. Grubhub Holdings,*
    970 F.3d 798 (7th Cir. 2020) .....................................................................................................9

*West v. LaserShip, Inc.,*
    No. 21-5382, 2023 WL 1972216 (S.D.N.Y. Feb. 13, 2023)....................................................17

*Zaken v. Jenny Craig, Inc.,*
    No. 11-2465, 2011 WL 4916928 (E.D.N.Y. Oct. 13, 2011).......................................................5

**Statutes**

10 Del. C. §§ 5701-5715.....................................................................................................................12

9 U.S.C. § 1.........................................................................................................................................8

CPLR § 7501......................................................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)........................................................................................................................1

## PRELIMINARY STATEMENT

The Amended Complaint of Plaintiffs Joel Guerrero, Mike Moise, Jose Diaz, Muhammed Sesay, Junior Janvier, and Omar Jerome ("Plaintiffs") should be dismissed in its entirety because each Plaintiff signed an Independent Contractor and Arbitration Agreement (the "Agreement") that requires them to arbitrate their claims on an individual basis. In breach of the Agreement, Plaintiffs filed this putative collective action alleging causes of action under federal, state, and city wage and hour laws. Their claims fall squarely within the scope of the Agreement's arbitration provision. Where a binding arbitration agreement covers the claims at issue, both the Federal Arbitration Act ("FAA")—which governs here—and state law mandate that the claims be compelled to arbitration.

Accordingly, Defendants GoBrands, Inc. d/b/a Gopuff ("Gopuff"), GB Logistics, LLC ("GB Logistics"), Yakir Gola ("Gola"), and Rafael Ilishayev ("Ilishayev"), (collectively, "Defendants"), respectfully request that the Court grant their motion to: (i) compel all claims asserted in Plaintiffs' Amended Complaint to individual arbitration pursuant to the FAA and (ii) dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3).[1]

## I.     RELEVANT FACTUAL BACKGROUND

Gopuff is a leading retail and instant commerce platform offering thousands of everyday products. Declaration of Jordan Holtzman-Conston ("Holtzman-Conston Decl."), ¶ 2. The company stores its own inventory in hundreds of local micro-fulfillment centers. *Id*. Goods arrive at the local micro-fulfillment centers before they are ordered by customers. *Id*. They are placed into inventory and are available for local sale and delivery. *Id*. Fulfillment centers typically stock

---

[1]     Plaintiffs erroneously name "GoPuff" as a defendant in this action. There is no legal entity named "GoPuff."

thousands of items, including private label items, and are located in areas to enable speedy delivery to customers. *Id.*

Customers order from Gopuff in part because of its convenience, and the company advertises that it offers delivery of groceries, snacks, alcohol, and other items in as few as fifteen minutes after a customer places an order. *Id.*, ¶ 3. Resembling grocery and convenience stores in some locations, micro-fulfillment centers are also open to the public to shop for items directly. *Id.*

When customers order through Gopuff's online platform, their orders are packed by employees at local micro-fulfillment centers. *Id.*, ¶ 5. If they elect for their items to be delivered, delivery partners deliver ready-to-go orders from the fulfillment center to the customer. *Id.* Delivering customer orders is the only service provided by delivery partners. *Id.* They use their own methods of transportation, with many delivery partners in New York City electing to deliver orders by bicycle. *Id.* Delivery partners are free to choose when they wish to provide services through goDrive, Gopuff's digital marketplace platform, and have exclusive control over their schedules. *Id.*, ¶ 6. [2]

Delivery partners that deliver orders from micro-fulfillment centers in New York only deliver goods to delivery addresses *in New York. Id.*, ¶ 9. It is not possible for delivery partners operating in a particular state to deliver across state lines because the delivery zones within each state are "geofenced." *Id.* This means that any customer who places an order can only receive products sourced from a micro-fulfillment center located in the same state as the customer, and that all deliveries by delivery partners in New York are exclusively *intra*state and local. *Id.*

---

[2]    GB Logistics is a technology platform and digital marketplace that helps delivery partners to deliver Gopuff goods to consumers.

As a condition of providing services through goDrive, GB Logistics requires delivery partners to execute the Agreement. *See Id*., ¶ 10. Each Plaintiff signed the Agreement, and the versions they signed all include the same, prominently displayed Arbitration Provision. *Id*., ¶ 22.[3] The Arbitration Provision broadly applies to "any dispute, controversy or claim arising out of or relating to th[e] Agreement, including any question regarding its breach, termination, enforcement, interpretation or validity." *See* Exhibit A at § 3(a). Under the Arbitration Provision, "all disputes between [a Plaintiff] and GB Logistics' fiduciaries, administrators, affiliates, subsidiaries, [and] parents . . . including but not limited to any dispute, controversy, or claim arising out of relating to [a Plaintiff's] relationship with GB Logistics," is also subject to arbitration. *Id*. "The affiliates of GB Logistics are each intended, third party beneficiaries of this Agreement, including the Arbitration Provision." *Id*. at § 3(f). The Arbitration Provision expressly applies to all "disputes regarding any city, county, state or federal wage-hour law," including the Fair Labor Standards Act ("FLSA"). *Id*. at § 3(a). The parties to the Agreement agreed that "in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." *Id.* at § 3(j).

The Agreement also contains a Class Action Waiver, which requires a plaintiff to arbitrate all claims "on an individual basis and not on a class basis" and which prohibits a plaintiff from joining his claims with those of any other delivery partner providing services through goDrive. *Id*. at § 3(e). The Agreement "shall be governed by and construed in accordance with" Delaware law, and the Arbitration Provision specifies that notwithstanding the choice of law provision, "any

---

[3] The Agreement was electronically signed by Janvier on September 11, 2021, by Moise on November 7, 2021, by Diaz on January 29, 2022, by Jerome on January 13, 2023, by Sesay on April 12, 2023, and on January 24, 2024, and by Guerrero on August 17, 2023. Holtzman-Conston Decl., ¶¶ 16-21.

arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act." *Id*. at §§ 3(b), 20.  The Arbitration Provision provides that, except for questions regarding the enforceability of the Class Action Waiver, the "arbitrator shall have the exclusive authority to [] determine the scope of, and resolve any dispute related to, the applicability, enforceability, revocability or validity of this Arbitration Provision or any portion thereof." *Id*. at §§ 3(d,e).

Despite Plaintiffs' clear consent to arbitrate any dispute arising out of the Agreement on an individual basis, they filed this putative collective action alleging minimum wage and overtime claims under the FLSA, New York Labor Law ("NYLL"), and the New York City Administrative Code ("NYC Code") in federal court.  *See* Dkt. No. 18 ("Am. Compl.").[4]  The crux of Plaintiffs' Amended Complaint is that Defendants misclassified them as independent contractors and failed to pay them adequate wages.  *Id.*  The Amended Complaint alleges that all Defendants operate "as the delivery service GoPuff and are, in all things, joint employers and/or wholly owned by one or another"; that GB Logistics is "affiliated directly and intimately with GoPuff"; and that Gola and Ilishayev "operate GoPuff and all affiliates as one and the same."  *See, e.g.*, *id.*, ¶¶ 2, 18, 34.

On September 4, 2024, Guerreo filed a Complaint in which he was the only named plaintiff. Dkt. No. 1.  On September 30, 2024, counsel for Defendants provided Plaintiffs' counsel with a copy of Guerrero's executed Agreement and subsequently requested that he voluntarily consent to arbitration, consistent with the parties' Agreement.  *See* Declaration of Jason D. Burns, Esq., at ¶ 2.  Guerrero refused to do so.  *Id*.  Defendants filed a motion to compel arbitration on October 28,

---

[4] Defendants do not concede any of the allegations or claims in the Complaint.   The Court, however, may rely on the allegations in the Complaint for the purpose of deciding this motion to compel arbitration.    *See Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-5651, 2014 WL 1172581, at *1 (S.D.N.Y. Mar. 21, 2014).

4

2024. Dkt. No. 13. Plaintiffs then filed an Amended Complaint on November 18, 2024, which, among other additions, added five named plaintiffs. *See generally* Am. Compl. Defendants now file their motion to compel arbitration as to all six Plaintiffs.

## II.    LEGAL STANDARD

The FAA reflects "a 'liberal federal policy favoring arbitration.'" *AT&T Mobility, LLC v. Concepcion,* 563 U.S. 333, 339, (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). The FAA embodies the "overarching principle that arbitration is a matter of contract," and commands courts to "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013) (citing *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 67 (2010) and *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985)).

When deciding a motion to compel arbitration under the FAA, courts must "construe[ ] an arbitration clause as broadly as possible and resolve[ ] doubts in favor of arbitration." *Zaken v. Jenny Craig, Inc.*, No. 11-2465, 2011 WL 4916928, at *1-2 (E.D.N.Y. Oct. 13, 2011) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 19-20 (2d Cir. 1995)). To determine whether claims are subject to arbitration, courts "focus[ ] on the factual allegations in the Complaint and [should] compel arbitration if the allegations underlying [an employee's] claim 'touch matters' covered by the parties' agreement." *Id.* at *2 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir. 1987)).

As the foregoing makes clear, "[t]he FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.,* No. 13-6804, 2014 WL 4802885, at *2 (S.D.N.Y. Sept. 18, 2014) (citations omitted).    Faced with this Circuit's overwhelming authority favoring the enforcement of arbitration agreements, Plaintiffs "bear[] the burden of proving that the claims at issue are unsuitable for arbitration." *Torres v. Major Auto. Grp.*, No. 13-687, 2014 WL 4802985, at *4 (E.D.N.Y. Sept. 25, 2014) (citation omitted).  They cannot.

## III.    ARGUMENT

### A.    The Court Should Compel Arbitration of Plaintiffs' Claims Under the FAA.

In deciding a motion to compel arbitration, courts address two questions: (1) whether the parties have entered into a valid agreement to arbitrate; and (2) if so, whether the dispute at issue falls within the scope of the parties' agreement to arbitrate. *In re Am. Express Fin. Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011).  Here, the answer to both questions is "Yes."

#### 1.    Plaintiff Entered into a Valid Arbitration Agreement.

To determine whether parties agreed to arbitrate, courts apply ordinary state-law principles governing the formation of contracts. *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019).  "The terms of an agreement provide the best evidence of what the parties intend, and a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* at 222 (citation and internal quotations omitted.)

The Agreement contains a choice of law provision requiring application of Delaware state law.  *See* Exhibit A at § 20(k).  Because there is no substantive difference between the relevant governing standards in New York and Delaware, the Court need not perform a choice-of-law

analysis and may apply the law of the forum state—New York. *See Schatzmann v. Harris Partners Ltd.*, No. 21-7301, 2024 WL 1255296, at \*5 (S.D.N.Y. Mar. 22, 2024). "[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019).

Under New York law, the basic elements of contract formation are offer, acceptance, and consideration. *N.F.L. Ins. Ltd. by Lines v. B & B Holdings, Inc.*, 874 F. Supp. 606, 610 (S.D.N.Y. 1995). The Agreement, and by extension the Arbitration Provision, satisfies all three elements. Plaintiffs were presented with the Agreement by GB Logistics (offer); they accepted by electronically signing the Agreement (acceptance); and the *mutual* Arbitration Provision applies to claims asserted by *either* party (consideration). These facts establish that Plaintiffs had adequate notice of, assented to, and became bound by the Agreement. *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (holding that under New York law "parties are presumed to know the contents of the agreements they have signed") (citation omitted); *Litvinov v. UnitedHealth Grp. Inc.*, No. 13-8541, 2014 WL 1054394, at \*3 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration where employee "electronically acknowledged that she received and reviewed" employer's arbitration policy). GB Logistics' reciprocal promise to arbitrate is, among other benefits, adequate consideration. *See, e.g., Marciano*, 14 F. Supp. 3d at 337 (compelling arbitration of plaintiff's claims after finding that arbitration agreement contained "sufficient consideration because . . . it mutually binds both parties to submit claims exclusively to arbitration"). Under New York law, the Agreement is a valid and enforceable contract.

2.      All of Plaintiffs' Claims Are Covered by the Arbitration Agreement.

The claims alleged in the Complaint fall within the scope of the broad Arbitration Provision, which applies to "**all disputes** arising out of or relating to [Plaintiff] relationship with GB Logistics" and specifically to all "**disputes regarding any city, county, state or federal**

**wage-hour law**.” *See* Exhibit A at § 3(a) (emphasis added).  To be sure, Plaintiffs' wage and hour claims under federal, state, and city law may be compelled to individual arbitration. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 515 (2018) (reaffirming that claims under the FLSA may be compelled to individual arbitration); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295-99 (2d Cir. 2013) (enforcing class and collective action waiver and reversing district court's decision denying motion to compel individual arbitration of FLSA claims); *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 248-51 (E.D.N.Y. 2016) (granting motion to compel individual arbitration of FLSA and NYLL claims).  Because the Agreement is a valid and binding contract and because Plaintiffs' claims squarely fall within the scope of the Arbitration Provision, the Court should compel them to individual arbitration.

        3.      Plaintiffs Do Not Fall within the Transportation Worker Exemption to the FAA

Defendants anticipate that Plaintiffs will argue that they are exempt from the FAA as transportation workers.  FAA's Section 1 exemption provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of *workers engaged in foreign or interstate commerce*."  9 U.S.C. § 1 (emphasis added).  However, this argument should be rejected because Plaintiffs, who make purely local, intrastate deliveries, have not alleged and cannot show that they are engaged in interstate commerce to qualify for this exemption.

FAA's Section 1 exemption is to "be afforded a narrow construction" in accordance with the "pro-arbitration purpose of the FAA" and exempts only "seamen, railroad employees" and "similar" interstate "transportation workers."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115, 118-19 (2001).  When determining whether workers fall within this exemption, a court should define the class of workers to which a plaintiff belongs and assess whether the class is engaged in

foreign or interstate commerce. *Bissonnette v. LePage Bakeries Park St., LLC*, No. 20-1681, 2024 WL 5084132, at *1 (2d Cir. Dec. 12, 2024) (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022)). In addressing the second prong, "courts have considered whether the class's work forms part of a single, unbroken stream of interstate commerce or whether interstate travel or commerce is a central or typical part of the job." *Chambers v. Maplebear, Inc.*, No. 21-7114, 2024 WL 3949344, at *4 (S.D.N.Y. Aug. 27, 2024) (citation omitted). The inquiry is focused on the work typically performed by the class of workers to which a plaintiff belongs, not the work of a defendant more generally. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022).

An individual is not a transportation worker for purposes of Section 1 when "the interstate movement of goods" is not "a central part of the job description of the class of workers to which they belong." *Wallace v. Grubhub Holdings*, 970 F.3d 798, 803 (7th Cir. 2020) (Barrett, J.) In contrast, "a transportation worker is one who is 'actively' 'engaged in transportation' of . . . goods across borders via the channels of foreign or interstate commerce" and "play[s] a direct and 'necessary role in the free flow of goods' across borders." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024) (citations omitted). A long line of courts have concluded that drivers who primarily deliver goods *intra*state from local retailers to consumers are not engaged in foreign or interstate commerce, and therefore are not exempt transportation workers. *See Chambers*, 2024 WL 394344, at *4-7 (analyzing and collecting cases).

The same conclusion follows here. The named Plaintiffs allege that they are members of a putative class of "delivery drivers for Defendants who reside and/or deliver for Defendants in New York City." (Am. Compl., ¶ 20.) Plaintiffs make purely local deliveries, and Gopuff's technology does not allow delivery partners to pick up orders from fulfillment centers in one state and deliver them to customers located in another one. Holtzman-Conston Decl., ¶¶ 2, 5, 9. It is

9

not possible for delivery partners operating in a particular state to deliver across state lines. *Id.*, ¶ 9. Many delivery partners' choice to deliver goods in New York City by bicycle and Gopuff's advertisement that goods are delivered in as few as fifteen minutes of ordering reflect the hyperlocal nature of Plaintiffs' deliveries. *Id.*, ¶¶ 3, 5; *see Bissonnette,* 2024 WL 5084132, at *2 (stating that "representations by the parties as to the nature of the transportation workers' intrastate route" are relevant to assessing whether they are engaged in interstate commerce). Plaintiffs are not analogous to seamen or railroad employees, whose primary job is to transport goods and passengers across state and national borders and who do so regularly. Plainly, the "interstate movement of goods" is *not* central to Plaintiffs' services. Plaintiffs do not allege and cannot offer support to the contrary.

That Gopuff sells goods that may be manufactured in various locations across the United States does not change this conclusion. The phrase "engaged in foreign or interstate commerce" describes the type of worker, not the work of the entity operating the business as a whole. *See Saxon*, 596 U.S. at 456. As part of Gopuff's business, goods arrive at local micro-fulfillment centers before they are ordered by customers. Holtzman-Conston Decl., ¶ 2. Once there, they come to rest and are placed into inventory and are made available for local sale and delivery. *Id.* Delivery partners are not involved in the "continuous interstate" movement of goods. *Bissonnette,* 2024 WL 5084132, at *2 (citing *Brock v. Flowers Food, Inc.*, 121 F.4th 753, 762 (10th Cir. 2024)). Delivering customer orders—which are packaged by different individuals and are ready-for-pick up when delivery partners arrive at a local micro-fulfillment center—across short distances is the only activity of Defendants' operation in which Plaintiffs are engaged. *Id.*, ¶ 5. Accordingly, there is no basis to conclude that Plaintiffs are transportation workers exempt from the FAA.

10

B.     **The Arbitration Provision Is Enforceable Under New York Law.**

Even if Plaintiffs were exempt from the FAA (which they are not), their claims would still be compelled to arbitration under state law. When the FAA Section 1 exemption applies, district courts in this Circuit routinely enforce arbitration provisions if they are enforceable under state law. *See Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 528-29 (S.D.N.Y. 2003) (collecting cases). This is because Section 1 does not "address the enforceability of employment contracts exempt from the FAA[;] it simply excludes these contracts from FAA coverage entirely." *Id.* at 529; *see also Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (explaining that where the FAA is inapplicable because of the Section 1 exemption, an arbitration agreement should be enforced under state law to "further[] the general policy goals of the FAA favoring arbitration").

The choice of law provision in the Agreement states that the agreement is "governed by Delaware law" and specifies that, notwithstanding the choice of law provision, any arbitration conducted pursuant to the terms of the Agreement shall be governed by the FAA. Ex. A. §§ 3(b), 20. As to the enforceability of the arbitration provision, there is no conflict between New York and Delaware law. *Viking Pump, Inc. v. Century Indem. Co.*, No. CIV.A. 10C-06141FSS, 2012 WL 1415933, at *1 (Del. Super. Ct. Mar. 7, 2012). In the absence of a conflict, this Court may apply New York law because Plaintiffs challenge conduct that occurred in New York and have brought claims under New York law. *See Brewer v. GEM Indus. Inc.*, No. 14-778, 2015 WL 773800, at *3 (N.D.N.Y. Feb. 24, 2015) ("If there is no conflict, then a choice of laws analysis is entirely unnecessary, and the forum state may apply its own law to the case at hand, so long as the forum state is one of the relevant jurisdictions."); *see also Nelson v. Gobrands, Inc.*, No. 20-5424, 2021 WL 4262325, at *5 (E.D.P.A. Sept. 20, 2021) (enforcing Gopuff arbitration agreement under Pennsylvania law, notwithstanding agreement's Delaware choice of law clause).

11

New York law strongly favors arbitration. *See Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*, 80 N.Y.2d 1031, 1032 (1992). The New York Court of Appeals "has repeatedly held that arbitration is a favored method of dispute resolution in New York" and mandated that "New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration." *Id.* (citations and internal quotation marks omitted). New York law does not have an exemption analogous to the FAA's transportation worker exemption. *See* CPLR §§7501, *et. seq.* Accordingly, under New York law, this Court should also compel arbitration.[5]

### C.      Plaintiffs Must Arbitrate Their Claims Against *All* Defendants.

All four Defendants are entitled to compel Plaintiffs' claims to individual arbitration even though only GB Logistics is a signatory to the Agreement. This is true for at least two reasons. First, Gopuff, Gola, and Ilishayev may enforce the Arbitration Provision as third-party beneficiaries. Second, Plaintiffs are estopped from objecting to arbitration with Gopuff, Gola, and Ilishayev because, according to their own allegations, Defendants are "closely related" and Plaintiffs' claims against them are "intertwined" with the Agreement.

---

[5] If the Court applies Delaware law, the Court should similarly enforce the parties' arbitration agreement. The Delaware Uniform Arbitration Act does not exempt workers engaged in transportation. *See* 10 Del. C. §§ 5701-5715. Delaware law applies a "strong presumption in favor of arbitration," such that "contractual arbitration clauses are generally interpreted broadly." *Behm v. Am. Int'l Grp., Inc.*, No. CV N10C-10-013, 2013 WL 3981663, at *5 (Del. Super. Ct. July 30, 2013). Indeed, Delaware's strong policy favoring arbitration is very similar to the FAA's pro-arbitration policy. *HDS Inv. Holding Inc. v. Home Depot, Inc.*, No. 3968-CC, 2008 WL 4606262, at *4 (Del. Ch. Oct. 17, 2008), *abrogated on different grounds by Viacom Int'l, Inc. v. Winshall*, 72 A.3d 78 (Del. 2013); *see also James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006) (explaining that "Delaware arbitration law mirrors federal law").

1.      The Non-Signatory Defendants Are Entitled to Enforce the Arbitration Provision as Third-Party Beneficiaries.

The Agreement states that affiliates of GB Logistics, including "current and former parent companies, subsidiaries, and other affiliated companies, as well as their respective . . . officers, directors, employees, [and] agents," are intended third-party beneficiaries of the Agreement, "including the Arbitration Provision." *See* Exhibit A at § 22(d). This express language leaves no doubt that the parties granted any such entity or person the right to invoke the Arbitration Provision. And, based on Plaintiffs' allegations, the list of intended third-party beneficiaries includes Gopuff, Gola, and Ilishayev. *See, e.g.*, Am. Compl., ¶ 2 (alleging that all Defendants "are one in the same, operating as the delivery service 'GoPuff' and are, in all things, joint employers and/or wholly owned by one or another"), ¶ 18 (alleging GB Logistics is "affiliated directly and intimately with GoPuff"), ¶ 34 (alleging that Gola and Ilishayev "operate GoPuff and all affiliates as one and the same"). For this reason alone, Gopuff, Gola, and Ilishayev are entitled to enforce the Arbitration Provision in this action. *See In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (granting motion to compel arbitration because non-signatory fell within the definition of "companies" referenced in underlying agreement's third-party beneficiary clause).

2.      The Non-Signatory Defendants Are Entitled to Enforce the Arbitration Provision on Estoppel Grounds.

Under principles of estoppel, parties who have not signed an arbitration agreement may compel a signatory's claims to arbitration when (1) the claims are "intertwined with the agreement that the estopped party has signed" and (2) there is a close relationship between the signatory and non-signatory defendants. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127-28 (2d Cir. 2010). *Id.* Defendants satisfy both prongs of this test.

13

> a.    *Plaintiffs' Joint Employment Claims Against GB Logistics and the Non-Signatory Defendants Are Factually Intertwined.*

Plaintiffs' joint employment claims against GB Logistics and the three non-signatory Defendants are covered by the Arbitration Provision.   Plaintiffs alleges not only the same claims against the Defendants, but also that they are jointly responsible for the same alleged conduct.   *See generally* Am. Compl.   These allegations "satisf[y] the requirement that the issues sought to be resolved against the [non-signatory Defendants] be factually 'intertwined' with those sought to be resolved against the [signatory Defendant] and therefore subject to the arbitration agreement." *Ouedraogo*, 2014 WL 1172581, at \*1 (compelling arbitration of plaintiff's FLSA and NYLL claims against alleged joint employer); *Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-7261, 2017 WL 519230, at \*3 n.2 (E.D.N.Y. Feb. 8, 2017) (compelling arbitration of plaintiffs' FLSA and NYLL claims against non-signatory defendant where complaint alleged non-signatory was a "joint-employer" and "consistently reference[d] the 'Defendants,' without differentiating between" them).

The decision in *Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62 (S.D.N.Y. 2023), is instructive.  There, a non-signatory—and alleged joint employer—moved to compel arbitration of plaintiff's claims under the FLSA and NYLL.  *Id.* at 79.  The court compelled arbitration because all the plaintiff's claims arose "out of the subject matter of the Services Agreement that she signed with" the signatory defendant, and because the claims were "premised on her allegation that she was misclassified as an independent contractor" while providing services to the non-signatory defendant.  *Id.*  The same is true of Plaintiffs' claims in this case:  Each cause of action hinges on Plaintiffs' contention that they were improperly classified as independent contractors pursuant to the Agreement, paid inadequate wages, and were jointly employed by all Defendants.  *See, e.g.*, Am. Compl., ¶¶ 88-113 (alleging Plaintiffs did not receive minimum wage or overtime or were

14

misclassified under pay structure explained in the Agreement); *see also Ragone v. Atl. Video at Manhattan Ctr.*, No. 07-6084, 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) (holding that plaintiff's discrimination claims arose under the subject matter of arbitration agreement that applied to "any and all claims or controversies arising out of [the employee's] employment"). Like *Reid*, this Court should find that Plaintiffs' claims against GB Logistics and the non-signatory Defendants are factually intertwined.

> b.    *Plaintiffs Have Alleged that GB Logistics and the Non-Signatory Defendants are "Closely Related."*

None of Plaintiffs' claims distinguishes between the Defendants. Instead, the Complaint treats them as a single unit. *See generally* Am. Compl. Plaintiffs specifically allege that all Defendants are "one in the same" and that, as "joint employers" they "control[l]ed" Plaintiffs' "work responsibilities" and are responsible for the conduct challenged in the Complaint. *E.g.*, ¶¶ 2, 44, 48-54, 57. Plaintiffs' allegations are precisely the type that courts have compelled to arbitration against non-signatory defendants. *See, e.g.*, *Reid*, 697 F. Supp. 3d at 81-82 (non-signatory satisfied second prong of estoppel test where plaintiff alleged his injuries were caused by the "concerted actions" of signatory and non-signatory) (citation omitted); *Greene v. Subcontracting Concepts, L.L.C.*, No. 13-1500, 2014 WL 1087999, at *1 (S.D.N.Y. Mar. 19, 2014) ("Plaintiffs' pleadings make plain their understanding that non-signatory Same Day Delivery and signatory SCI were their co-employers: Plaintiffs allege identical FLSA and NYLL claims against Same Day Deliver and SCI, both of which are alleged to be Plaintiffs' 'employers'").

For purposes of compelling arbitration, Defendants are closely related for another reason. The Arbitration Provision applies to all disputes between Plaintiffs and "GB Logistics' fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them." Agreement, at § 3(a). As alleged in the Amended Complaint, each non-signatory falls within the

15

scope of this provision.  *See* Am. Compl., ¶ 2, 18, 34.  Because all Defendants are "linked textually" with the Arbitration Provision, Plaintiffs must arbitrate their claims against each Defendant.  *See Reid*, 697 F. Supp. 3d at 84 (finding that non-signatory defendant satisfied second prong of estoppel test where defendant was "'linked textually" to plaintiff's arbitration provision by virtue of the agreement's reference to "clients") (citation omitted).

The decision in *Ouedraogo* is on point.  The plaintiffs (delivery drivers) brought a class and collective action under the FLSA and NYLL against their direct employer and several alleged joint employers.  2014 WL 1172581, at *1.  Applying the Second Circuit's estoppel test, Judge Nathan compelled arbitration of *all* claims against both the signatory/acknowledged employer (SCI) and the non-signatory/alleged joint employer (A-1):

> The Court also finds the relationship between Plaintiff and the non-signatory A–1 Defendants to be sufficiently close to justify arbitration . . . As alleged in the Second Amended Complaint, Plaintiff "was supervised by" and "was given assignments and routes by" A–1 employees . . . These allegations, in combination with the fact that the claims against A–1 and SCI are identical, support the conclusion that Plaintiff "understood [A–1] to be, to a considerable extent, [his] co-employer." . . . Under these circumstances, Plaintiff's relationship with the A–1 Defendants is sufficiently close to estop him from denying the arbitrability of his dispute against them.

*Id.* at *5 (citations omitted). Like *Ouedraogo*, Plaintiffs allege the same claims against all Defendants and do not distinguish between Defendants.  Instead, Plaintiffs refer to Defendants collectively throughout the Amended Complaint.  *See e.g.*, Am. Compl., ¶¶ 36, 44, 48-50, 59. As in *Ouedraogo*, Plaintiffs' allegations lead to one conclusion: their claims against all Defendants should be compelled to arbitration.

### D.    Plaintiffs Must Arbitrate Their Claims on an Individual Basis.

In addition, Plaintiffs' claims should be compelled to arbitration solely on an individual basis because the Agreement's Class Action Waiver is valid and enforceable.  *See Epic Sys.*, 584

16

U.S. at 502, 524 (holding that arbitration agreements providing for individualized proceedings must be enforced as written).  It is well-settled that class and collective action waivers in arbitration agreements governed by the FAA are valid and enforceable.  The Supreme Court recently reaffirmed that Congress' instruction to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings."  *Id*. at 502; *see also Italian Colors*, 570 U.S. at 233 (enforcing class action waiver in arbitration agreement and noting that courts "must rigorously enforce" arbitration agreements) (citation omitted); *AT&T Mobility LLC*, 563 U.S. at 347-52 (holding that the FAA preempts state law regarding the unconscionability of class action waivers and finding class action waivers in arbitration agreements enforceable).

Plaintiffs' Class Action Waiver is also enforceable under state law.  Here, too, there is no conflict between Delaware and New York law—both jurisdictions enforce class action waivers.  *Compare Reid*, 697 F. Supp. 3d at 85, *with Black v. JP Morgan Chase & Co*., No. 10-848, 2011 WL 3940236, at *12 (W.D. Pa. Aug. 25, 2011) (applying Delaware law).  So, if the Court finds that the FAA does not apply, it should compel Plaintiffs' claims to individual arbitration under New York law.  *Brewer*, 2015 WL 773800, at *3.[6]  *See Reid*, 697 F. Supp. 3d at 85 (citing *West v. LaserShip, Inc.*, No. 21-5382, 2023 WL 1972216, at *2 (S.D.N.Y. Feb. 13, 2023) ("New York courts routinely uphold contractual proscriptions against class actions," and "also uphold class and collective action waivers when applying . . . New York law in FLSA and NYLL actions") (collecting cases)).  Because the Class Action Waiver is enforceable under the FAA and New York law, the Court should compel Plaintiffs to arbitrate their claims on an individual basis.

---

[6] Delaware law also enforces class and collective action waivers.  *See, e.g., Black*, 2011 WL 3940236, at *12) (recognizing enforceability of class action waivers under Delaware law) (collecting cases); *Fluke v. Cashcall, Inc.*, No. 08-5776, 2009 WL 1437593, at *6 (E.D. Pa. May 21, 2009) ("Under Delaware law, a class-action waiver provision in an arbitration agreement is enforceable.") (citation omitted).

**E.      The Arbitration Provision Contains a Valid and Enforceable Delegation Clause.**

To the extent Plaintiffs challenge the validity or enforceability of the Arbitration Provision, these gateway questions of arbitrability must be submitted to the arbitrator pursuant to the Arbitration Provision's delegation clause.  Exhibit A at § 3(d); *see Rent-A-Center, W., Inc.*, 561 U.S. at 70 (recognizing the enforceability of delegation clauses).

Here, the Arbitration Provision provides that, except for questions regarding the enforceability of the Class Action Waiver, the "arbitrator shall have the exclusive authority to [] determine the scope of, and resolve any dispute related to, the applicability, enforceability, revocability or validity of this Arbitration Provision or any portion thereof."  Exhibit A at §§ 3(d, e).  Because the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, an arbitrator must decide them.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Reid*, 697 F. Supp. 3d at 85 (enforcing clause delegating issues of arbitrability to the arbitrator, notwithstanding clause's carveout for disputes relating to enforceability of class and collective action waivers).

**F.      Plaintiffs' Claims Should Be Dismissed.**

"[T]he district court has discretion in determining whether to stay or dismiss the case pending arbitration."  *Lewis v. ANSYS, Inc.*, No. 19-10427, 2021 WL 1199072, at *3 (S.D.N.Y. Mar. 30, 2021) (citation omitted).  Because all Defendants are entitled to enforce the arbitration agreement, and because all claims in the Complaint are subject to arbitration, there is little to be gained by staying the action.  The Court should dismiss this case without prejudice and direct Plaintiffs to arbitrate their claims on an individual basis in accordance with the terms of the Agreement.

## IV.    CONCLUSION

Plaintiffs' agreement to arbitrate is valid and enforceable and the claims alleged in the Amended Complaint fall squarely within its scope.  Because Plaintiffs' claims are subject to arbitration, the Court should compel them to individual arbitration and dismiss the Amended Complaint.

DATED:  December 16, 2024
        New York, New York

**GREENBERG TRAURIG, LLP**

By /s/ *Jason D. Burns*

Jason D. Burns
Shira M. Poliak
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
jason.burns@gtlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of December, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all registered users.

<u>*/s/ Jason D. Burns*</u>
Jason D. Burns