UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Joel Guerrero, Omar Jerome, Jose Diaz, Mike Moise, Muhammed Sesay, and Junior Janvier, on behalf of themselves and others similarly situated,, | § § § § § § § § § § § § § § § | Civil Action No. 1:24-cv-6727 |
| *Plaintiffs*, | | |
| v. | | |
| GoPuff, Gobrands, Inc.,Gola Yakir, Rafael Ilishayev, and GB Logistics LLC, | | |
| *Defendants*. | | |

PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

AND MOTION TO DISMISS

**HARMAN GREEN PC**
Walker G. Harman, Jr.
Evan Richardson
824 Exposition Ave., Suite 8
Dallas, Texas 75226
(646) 248-2288
*Attorney for Plaintiffs*

Contents

Preliminary Statement .......................................................................................................... 3

Facts ...................................................................................................................................... 4

Argument .............................................................................................................................. 5

   1.   Standard ....................................................................................................................... 5

   2.   There is no enforceable contract ................................................................................. 6

      a)   Each Agreement calls for independent contractors ........................................ 6

      b)   Plaintiffs are all employees ............................................................................ 7

      c)   The Agreement, as written, is illegal ............................................................ 10

   3.   The Agreement is unenforceable as unconscionable and against public policy ............... 12

      a)   The Agreements are procedurally unenforceable ........................................ 14

      b)   The agreements are substantively unconscionable ...................................... 14

      c)   The arbitration clause is a product of fraud, and cannot be enforced. .......................... 15

   4.   This Court, by the terms of the agreements, must decide whether a Class can proceed in this Court. .................................................................................................................... 15

   5.   The collective action Waiver is not enforceable. ...................................................... 16

Conclusion ......................................................................................................................... 20

**Cases**

*American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) ...................................... 18

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y. 2002) (citing *Gilman*, 73 N.Y.2d at 10) ................................................................................................................................. 13, 14

*Carmine v. Murphy*, 285 N.Y. 413, 35 N.E.2d 19 (1941) ............................................................. 10

*Epic Systems Corporation v. Lewis*, 584 U.S. 497 (2018) ................................................ 16, 17, 19

*Fairstead Capital Management LLC v. Blodgett*, 288 A.3d 729 (Del. Ch. 2023) .......................... 7

*Gallagher ex rel. Gallagher v. Houlihan Lawrence Real Estate*, 259 A.D.2d 853 (N.Y. App. 3rd Dept. 1999) ................................................................................................................................. 7

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1 (1988) ....................................................... 13, 14

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)). ................................................. 17

*Gold v. New York Life Ins. Co.*, 153 A.D.3d 216 (App. Div., 1st Dep. 2017)............................. 20

*Lambert v. Tesla, Inc.*, 923 F.3d 1246 (6th Cir. 2019) ............................................................... 17

*Matter of Rivera [State Line Delivery Serv.—Roberts]*, 69 NY2d 679 (1986) ........................... 10

*Matter of Vega (Postmates Inc.—Commissioner of Labor)*, 35 N.Y.3d 131 (2020) ........ 7, 8, 9, 10

*Mickles v. Country Club Inc.*, 887 F.3d 1270 (11th Cir. 2018) ................................................... 18

*Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659
    (2016) ...................................................................................................................................... 5

*Murphy v. Heartshare Human Services of New York*, 254 F.Supp.3d 392 (E.D.N.Y. 2017). 11, 13

*Patterson v. Raymours Furniture Company, Inc.*, 659 Fed Appx 40 (2nd Cir. 2016) ................. 20

*R.R. v. H.S.*, 67 Misc.3d 624 (D.C.N.Y., Suffolk County 2020) ................................................. 10

*Remington Rand v. International Business Mach. Corp.*, 167 Misc. 108 (S.Ct. N.Y. 1937) ....... 10

*Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329 (1987) ................................................................. 7

*Schermerhorn v. Talman*, 14 N.Y. 93 (1856) .............................................................................. 12

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26 (2nd Cir. 2001) ....................... 11

*Stone v. Freeman*, 298 N.Y. 268 (1948) ........................................................................... 5, 11, 12

*Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2nd Cir. 2013) .............................................. 20

*Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396 (2nd Cir. 2009)..................... 11

*Ungar v. Matarazzo Blumberg & Associates, P.C.*, 260 A.D.2d 485 (2nd Dept., App. Div., N.Y.
    1999).................................................................................................................................... 12

*Walters v. Fullwood*, 675 F.Supp. 155 (S.D.N.Y. 1986)............................................................. 12

*William C. Atwater & Co. v. Panama R. Co.*, 246 N.Y. 519 (1927) .............................................. 6

*Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332 (11th Cir. 2023) ................................................. 17

**Statutes**

216(b).......................................................................................................................... 16, 17, 18, 19

Judiciary Law § 491................................................................................................................. 12

**Treatises**

Restatement (Second) of Torts § 525........................................................................................ 15

Plaintiffs Joel Guerrero, Omar Jerome, Jose Diaz, Mike Moise, Muhammed Sesay, and Junior Janvier, on behalf of themselves and others similarly situated, ("Plaintiffs") by and through Harman Green PC, hereby oppose Defendants GoPuff, Gobrands, Inc.,Gola Yakir, Rafael Ilishayev, and GB Logistics LLC ("Defendants") Motion to Compel Arbitration and Motion to Dismiss the Amended Complaint (the "Motion").  Dkts. 24-27.

### Preliminary Statement

The Defendants are a grocery chain that provide a delivery service, and this case is about the widespread, systematic abuse of their delivery employees in New York State and beyond. Defendants do not pay minimum wage, or even half, amongst other blatant wage and hour violations.  Other jurisdictions have held that Defendants have violated these employment laws with their scheme to misclassify and underpay employees.[1]  Plaintiffs filed this collective action seeking fair pay under the law as employees for Defendants.  Defendants then moved to compel arbitration based on a coercive, unfair, and illegal agreement[2] (the "Agreement" or the "Agreements") purporting to treat Plaintiffs as independent contractors.  Defendants fixate on the provisions of the "arbitration clause" (section 3 of each Agreement), but skip a crucial step: determining whether an employment agreement exists at all.

Nevertheless, that arbitration clause contains a waiver of all class and collective actions and denies any arbitrator the authority to hear any class or collective claims (the "Waiver").  Dkt. 27.1 at 3(e).  Defendants have put Agreements before the Court that do not actually control Plaintiffs' employment, as discussed below.  This lawsuit is brought as a collective action seeking certification to protect the thousands of workers subjected to Defendants' illegal wage

---

[1] Press Release from Office of the Attorney General of Massachusetts, March 30, 2023, https://www.mass.gov/news/ags-office-issues-62-million-in-citations-against-national-delivery-service-company-over-employee-misclassification-violations.

[2] At no point do Plaintiffs concede that an agreement was entered into or is controlling over this action.  For each named Plaintiff, Defendants have submitted a corresponding exhibit at Dkt 27.  Those agreements are identical, or virtually identical, and, therefore, will be referred to throughout this brief as simply an 'agreement' or 'agreements.'

3

practices. Many of Defendants' employees are either undocumented or cannot speak English. Subjecting each named Plaintiff and the Putative Plaintiffs in this case to arbitration would only further marginalize them, and all employees, further. As well, such a direction would cause unnecessary and extreme expense, for all parties, including prospective Plaintiffs, and litigation would last years with, potentially, inconsistent results across dozens or hundreds of cases. It is, in fact, a poor business decision for Defendants to arbitrate these claims individually (when assessing on a cost perspective) highlighting the fact that Defendants seek to hide the Plaintiffs claims so they can continue their illegal wage practice.

### Facts

Plaintiffs are or were employees for Defendant. Plaintiffs deliver items for Defendants to Defendants' customers. Plaintiffs do not choose which items are delivered to customers. Declaration of Mike Moise at ¶13. Customers do not choose which delivery driver is their driver. Declaration of Mike Moise at ¶16. Plaintiffs cannot and do not hold themselves out as independent contractors, they can make no living off their services offered to Defendants but to perform work for Defendants. Declaration of Mike Moise at ¶25-26. Plaintiffs do not control their own delivery schedules, as they are huddled into cattle call style rooms as they await assignment. Declaration of Mike Moise at ¶17-18. Plaintiffs cannot operate their 'business' without access to Defendants' marketplace. Declaration of Mike Moise at ¶5-9. Plaintiffs cannot work other delivery apps while working for Defendants. Declaration of Mike Moise at ¶7-8. Furthermore, the agreements put before the Court were and are coercive, and did not meet necessary legal thresholds to satisfy a meeting of the minds.

Numerous people have put videos of 'a day in the life' of a GoPuff delivery driver.[3]

---

[3] DollarBreak, *GoPuff Driver Review - How Much Does a Gopuff Driver Make? (5 Hours Test)*, June 17, 2024, YOUTUBE.COM, https://www.youtube.com/watch?v=DxHpG_x2FHs

4

These videos, which reside in the public domain, both show employment and pay practices by Defendants.  It is worth noting that the delivery, wage, and pay practices vary by State, but the videos serve to show that Defendants control the pickup and delivery of items (including requiring a photo of the delivery).  As well, this Court can Google "GoPuff Delivery Driver" and see a plethora of image of uniforms, specialized transport bags, and other 'employment markings' in the public domain.  As well, it would appear that in some videos, such as one uploaded by Your Driver Mike,[4] Defendants *do* have a guaranteed minimum wage (in that video $9.00), but do not have such a minimum in New York.

### Argument

1.    Standard

Defendants have moved to compel arbitration, and Plaintiffs challenge the validity of both the arbitration clause and the Agreement in its entirety.  "'[C]ourts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself.'"  *Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 675 (2016) (citations omitted).  On the one hand, the documents submitted to the Court at Dkt 27.1-7 are not controlling and invalid for the reasons explained below.  In particular, the Agreements are premised on illegality, and are illegal themselves.  Therefore, the contracts are void from the start and no portion of them (including the arbitration clauses) are severable or enforceable.  *Stone v. Freeman*, 298 N.Y. 268, 271 (1948).

On the other hand, even assuming a valid contract existed (but it does not), the arbitration clause itself is invalid and cannot be enforced by its own terms.  The arbitration clause

---

[4] Your Driver Mike, Driving For Gopuff (FIRST Shift Complete Review), June 11, 2022, YOUTUBE.COM, https://www.youtube.com/watch?v=3mOxVQtPoUg

5

explicitly declines the arbitrator any authority to make a decision on whether a collective action may proceed, and, so, this Court must determine whether a valid and enforceable contract exits.

2.      There is no enforceable contract

As will be explained, there is no enforceable contract governing Plaintiffs' employment. Defendants fixate on the provisions of the arbitration clause, but skip a crucial step: determining whether an employment agreement exists at all.  The Agreements put before the Court, Dkts. 24.1-.24.7, govern a relationship between independent contractors and Defendants.[5]  The Agreements are not contracts governing employment.  In construing a contract, "[f]orm should not prevail over substance, and a sensible meaning of words should be sought."  *William C. Atwater & Co. v. Panama R. Co*., 246 N.Y. 519, 524 (1927).  This Agreement does not cover Plaintiffs' employment by its own plain language: "Neither this Agreement nor Professional's performance under this Agreement shall create [a relationship of] employer and employee."  Dkt. 27-4 at (4).  The arbitration clause and the Agreement, then, do not reach this controversy between employees and employer.

### a)  Each Agreement calls for independent contractors

The Agreements Defendants put forth all state that they are between GB Logistics, LLC and a "Delivery Professional" who "conducts business as an *independent entity* providing delivery services, *and holds itself out as such*."  Dkt. 27 exhibits 1-7 (emphasis added). Plaintiffs, as employees, are not signatories to the Agreement.  Declaration of Mike Moise at ¶25-26.  The Agreement calls for arbitration between independent contractors and GB Logistics, LLC.  Plaintiffs' employment cannot be governed by the Agreement, because they are employees (explained in depth below), and not independent contractors.  The Agreement, by its

---

[5] Plaintiffs are not conceding, here or at any time, that a valid contract exists in any capacity.

explicit terms, states that "any dispute, controversy or claim *arising out of or relating to this Agreement*,[6] […] shall be finally settled by arbitration." Dkt. 27-4 at 3(a) (emphasis added). This dispute does not arise out of or relate to the Agreement, it relates to Plaintiffs' work completed as employees, and the law is clear that you cannot contract around the obligations imposed by the Fair Labor Standards Act and New York's common law distinction between independent contractors and employees.

As such, Plaintiffs contend that they are non-signatories, and that no Agreement covers their work completed as employees. "Issues of contract formation cannot be delegated to an arbitrator; they are always for the court." *Fairstead Capital Management LLC v. Blodgett*, 288 A.3d 729, 735 (Del. Ch. 2023). Whatever contract Defendants purported to create, it does not reach Plaintiffs' employment in New York. The Agreement calls to bind independent contractor's independent businesses, not Plaintiffs' employment with Defendants. This Court has "distinguished an employment contract from other types of contract where the implied-in-law theory has been adopted." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 336 (1987). Plaintiffs, as employees, are entitled to protection such as workers' compensation[7] and minimum wage. The agreement presented to the Court would, entirely, erode those protections, as it would, necessarily, accept that Plaintiffs are independent contractors, and not employees.

      *b)  Plaintiffs are all employees*

This case is, in sum and substance, identical to *Matter of Vega (Postmates Inc.—Commissioner of Labor)*, 35 N.Y.3d 131 (2020). In *Vega*, the Court found that the Plaintiff there was an employee after considering that "Postmates is a delivery business that uses a website and

---

[6] The Agreement governs a relationship between an independent contractor's sole proprietorship and Defendants, it does not govern the work Plaintiffs complete as employees.

[7] *Gallagher ex rel. Gallagher v. Houlihan Lawrence Real Estate*, 259 A.D.2d 853, 853 (N.Y. App. 3rd Dept. 1999) ("The mere fact that a contract designates a party as an independent contractor is not dispositive of the issue").

7

smartphone application to dispatch couriers to pick up and deliver goods from local restaurants and stores to customers in cities across the United States." *Id.* at 135. One distinguishing element is that with Postmates, the Plaintiffs there were interacting with third party restaurants; but, here, Plaintiffs operated *solely* for Defendants and were wholly controlled and wholly integrated with only Defendants on all aspects of their employment. In fact, Plaintiffs here cannot complete outside work while working for Defendants. Declaration of Mike Moise at ¶7-8. Stated differently, the Court in *Vega* found the delivery drivers to be employees and there are *even more* compelling elements to mandate that Plaintiffs in this case are employees.

The following are critical points the Court found illustrative for *Vega*, and they are matched to the pre-discovery evidence submitted to the Court in this case:

- In *Vega*, the Court found the speed in which items were delivered, under an hour, illustrative, and in this case deliveries occur 'within fifteen minutes.' *Vega*, N.Y.3d. at 135; Dkt. 27 at 3.

- In *Vega*, the Court found that the "company is operated through Postmates' digital platform" illustrative, and in this case the agreements call explicitly for the use of Defendants' digital platform. *Vega*, N.Y.3d. at 137; Dkt. 27 at 2.

- In *Vega*, the Court found "Postmates informs couriers where requested goods are to be delivered only after a courier has accepted the assignment" illustrative, and in this case the exact same is true. *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶9-15.

- In *Vega*, the Court found that "[c]ustomers cannot request that the job be performed by a particular worker" illustrative, and in this case the exact same is true. *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶16.

8

- In *Vega*, the Court found illustrative that "[i]n the event a courier becomes unavailable after accepting a job, Postmates—not the courier—finds a replacement," and in this case the same is true. *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶10.

- In *Vega*, the Court found illustrative that "[a]lthough Postmates does not dictate the exact routes couriers must take between the pickup and delivery locations, the company tracks courier location during deliveries in real time on the omnipresent app, providing customers an estimated time of arrival for their deliveries," and in this case the exact same is true. *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶21.

- In *Vega*, the Court found the pay concept that "[t]he couriers' compensation, which the company unilaterally fixes and the couriers have no ability to negotiate, are paid to the couriers by Postmates. Postmates, not its couriers, bears the loss when customers do not pay" illustrative, and in this case the exact same is true. *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶11.

- In *Vega*, the Court found illustrative that "Postmates unilaterally sets the delivery fees, for which it bills the customers directly through the app," and in this case the exact same is true as Plaintiffs have no control over their pay. *Vega*, N.Y.3d. at 138; Dkt. 27 at 2.

While all nine pages of the *Vega* decision can relate to the case at hand, most illustrative is this paragraph:

> Postmates exercises more than "incidental control" over its couriers—low-paid workers performing unskilled labor who possess limited discretion over how to do their jobs. That the couriers retain some independence to choose their work schedule and delivery route does not mean that they have actual control over their work or the service Postmates

provides its customers; indeed, there is substantial evidence for the Board's conclusion that Postmates dominates the significant aspects of its couriers' work by dictating to which customers they can deliver, where to deliver the requested items, effectively limiting the time frame for delivery and controlling all aspects of pricing and payment. *Vega*, N.Y.3d. at 138

There is no argument to the contrary for Defendants here, simply saying someone is an independent contractor does not make it so.  It is clearly immaterial that "while couriers decide when to log into [Defendants'] app and accept delivery jobs, the company controls the assignment of deliveries by determining which couriers have access to possible delivery jobs." *Vega*, N.Y.3d. at 138; Declaration of Mike Moise at ¶7-8, 17-20.  This is not novel or unique to modern delivery apps, as in 1981, a delivery driver was considered an employee "even though [Rivera] set his own delivery routes and did not have a set work schedule but called the company's dispatcher whenever he wished to engage in work, accepting only the jobs he desired." *Vega*, N.Y.3d. at 139 (citing *Matter of Rivera [State Line Delivery Serv.—Roberts]*, 69 NY2d 679 (1986).  Making this even more compelling is that Plaintiffs cannot accept a job without actually being, physically, at the worksite and at Defendants' stores.  Declaration of Mike Moise at ¶20.

### c)  The Agreement, as written, is illegal

"It is well settled that illegal contracts will not be enforced by the courts." *R.R. v. H.S.*, 67 Misc.3d 624, 626 (D.C.N.Y., Suffolk County 2020).  When a contract demands illegal actions, such as forcing Plaintiffs here to operate as independent contractors rather than employees, such a contract cannot be enforced, and no remedy may derive from it.  *Carmine v. Murphy*, 285 N.Y. 413, 35 N.E.2d 19 (1941).  When the illegality "taints the entire contract" as it does in this case, the Court should hold that the entire contract is invalid.  *Remington Rand v. International Business Mach. Corp.*, 167 Misc. 108, 118 (S.Ct. N.Y. 1937).  In this case, the arbitration clause is not simply a generic arbitration agreement supported by at will employment

10

because, in fact, the Agreements explicitly denounce at will employment. Rather, the arbitration clause is a catch all to allow Defendants' illegal practice to continue by improperly and unfairly silencing employees. "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." *Stone v. Freeman*, 298 N.Y. 268, 271 (1948) (citations omitted).

The Agreements, as presented at Dkt. 27.1-7, were void from the start, and were never enforceable. *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co*., 263 F.3d 26, 31 (2nd Cir. 2001). Because the Agreements, and the arbitration clauses contained therein, were void from the start, judicial intervention is appropriate. *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 405 n. 5 (2nd Cir. 2009). "A contract to ignore workers' statutory overtime rights is void as against public policy." *Murphy v. Heartshare Human Services of New York*, 254 F.Supp.3d 392, 405 (E.D.N.Y. 2017). The Agreements are illegal as they wrongfully denied Plaintiffs their statutory rights to employment benefits such as workers' compensation and unemployment benefits and, as well, demanded that Plaintiffs operate in a legal capacity that was not available to them so Defendants could both avoid paying minimum wage and employment related taxes.

Section 52 [1] (a) of the Workers' Compensation Law makes it a Class E felony for a failure to secure workers' compensation coverage for more than five employees within a 12-month period. As well, the misclassification is illegal under numerous State and federal statutes preventing wage theft and tax fraud, as Defendants commit tax fraud by reporting income listed as payments via 1099 rather than standard w-2 payments that require payroll taxes. The agreements are not illegal merely because they violate the Fair Labor Standards Act ("FLSA")

11

(although they, in fact, do violate the FLSA), but, also, because they are part of a carefully organized scheme to defraud the federal and State government, and, as well, avoid responsibilities under the Worker's Compensation Law. "[N]o court should be required to serve as paymaster of the wages of crime." *Stone v. Freeman*, 298 N.Y. 268, 271 (1948) (citing *Schermerhorn v. Talman*, 14 N.Y. 93, 141 (1856).

Arbitration was denied in an action where a college athlete allegedly accepted payments in violation of "sections 3–1–(a) and 3–1–(c) of the N.C.A.A. Constitution, the observance of which is in the public interest of the citizens of New York State." *Walters v. Fullwood*, 675 F.Supp. 155, 160 (S.D.N.Y. 1986). Plaintiffs' counsel does not challenge that the N.C.A.A. Constitution was of great import to the State of New York in 1986, but, surely, upholding the law of United States, the State of New York, and protecting the rights of employees is an even greater public interest. In a case where a non-attorney was promised legal fees in violation of Judiciary Law § 491, the Court refused to intervene in any capacity.[8] *Ungar v. Matarazzo Blumberg & Associates, P.C.*, 260 A.D.2d 485 (2nd Dept., App. Div., N.Y. 1999). The Agreement is illegal, is therefore void, and is, in all things, blatantly contradictory to the public policies of the State of New York. As well, the arbitration clause itself is blatantly unenforceable because it is, clearly, a means to hide this illegal wage practice and is a violation of public policy in its own right.

3.      <u>The Agreement is unenforceable as unconscionable and against public policy</u>

It is clear and apparent that the Agreements are not valid under New York legal standards for enforcing contracts. The Agreements bind the Plaintiffs to operate as sole proprietors yet,

---

[8] Arbitration in *Ungar* was commenced <u>before</u> any judicial action was commenced. As such, the Court could not stop the arbitration, but adamantly refused to act because a "party may not seek the assistance of the courts in enforcing an illegal contract." *Ungar v. Matarazzo Blumberg & Associates, P.C.*, 260 A.D.2d 485 (2nd Dept., App. Div., N.Y. 1999) (citations omitted).

both in practice and by the terms of the Agreements, none of them can do so.  Plaintiffs have no independent licenses to sell alcohol (though Defendants have them deliver it), nor do they own or operate their own businesses; Defendants simply had Plaintiffs, and all delivery drivers, agree to hold themselves out as independent contractors so they can avoid their obligations under the FLSA or the New York Labor Law.  The Agreements bind the parties to operate outside of the Workers' Compensation structure and to operate outside of the employment protections offered to *employees*.  Despite this, the Agreement reaches to cover 'all disputes including wage and hour disputes.' Dkt 27.2 at 3(a).  Therein lies the contradiction and the fallacy of the Agreement: it demands that *employees* vacate their rights (ie. litigating wage and hour disputes in Court) despite not being parties to the Agreement (which only applies to independent contractors).  The Agreement calls for an independent contractor, who is not subject to wage and hour laws, to subject all of their wage and hour claims to arbitration.  "A contract to ignore workers' statutory overtime rights is void as against public policy." *Murphy v. Heartshare Human Services of New York*, 254 F.Supp.3d 392, 405 (E.D.N.Y. 2017).

The Agreements can only be enforceable to the extent that they are not unconscionable. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988).  The Agreements in this case sit atop the pinnacle of unconscionability.  The Agreements i) demand that employees hold themselves out as independent contractors and ii) try to hide the illegal wage practices by forcing every employee to arbitrate their claims.  "An unconscionable contract is 'one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms.'" *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002) (citing *Gilman*, 73 N.Y.2d at 10).  In this instance, there was no meaningful choice on behalf of the Plaintiffs, and they are subjected to extremely

13

unfavorable (and illegal) terms. *Id.*

### a) The Agreements are procedurally unenforceable

"While inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable […] such inequality, when coupled with high pressure tactics that coerce an employee's acceptance of onerous terms, may be sufficient to show that an employee lacked a meaningful choice." *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). The Agreement specifically states that unless Plaintiffs, who were and are employees, agree to operate as independent contractors, *see* Dkt. 27-4 at 4, they cannot commence their employment. The Agreement does not contain any provisions about consulting with attorneys. The Agreement does not require that Plaintiffs actually read it. Declaration of Mike Moise at ¶31-32. The Agreement is not presented in any language other than English. The Agreement allows Defendants to take Plaintiffs' "personal data" and "transfer" it to third parties for any and all purposes, including "lead generation." Again, this Agreement purports to bind an independent contractor to Defendants, yet the agreement states that Plaintiffs cannot utilize any of Defendants' Confidential Information, Dkt. 27-4 at (9)(a-c), but Defendants may utilize *all* of Plaintiffs' personal data for any purpose. Dkt. 27-4 at (9)(e).

### b) The agreements are substantively unconscionable

The Agreement, taken as a whole, is blatantly unreasonable and unconscionable given how strongly it favors Defendants. *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 384 (S.D.N.Y. 2002). The Agreement expressly provides that Plaintiffs assume all liabilities stemming from the work performed (including injuries on the job and tax consequences) for no benefit but the opportunity to work for Defendants. When that work is eventually completed, Plaintiffs are paid well below minimum wage. Dkt. 18 at p. 9.

14

The agreements explicitly call for the identification of "all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions *and taxes* arising out of or related to (a) Professional's breach of its representations, warranties or obligations under this Agreement; or (b) any claim by a third party (including Customers, regulators or government authorities) directly or indirectly related to your provision of Professional's Delivery Services or use of goDrive." Dkt. 27-4 at (12). This provision, essentially, says that if the government (or any other entity) were to find Defendants liable for illegal wage practices (as the government of Massachusetts has), Defendants are entitled to have Plaintiffs indemnify them. Stated differently, <u>Plaintiffs must indemnify Defendants for the illegal acts Defendants have committed against them</u>. If such a practice were allowed as an enforceable contract in New York, the very fabric of all employment laws would be completely unraveled.

> c) *The arbitration clause is a product of fraud, and cannot be enforced.*

The definition for Common Law Fraud, arising out of the Restatement (Second) of Torts § 525, is "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or refrain from acting is subject to liability for harm caused by justifiable reliance on the misrepresentation." The arbitration clause in each Agreement is a product of fraud. The clause states that Plaintiffs' independent contractor entities much arbitrate all "wage-hour" laws, yet such a classification is not available to independent contractors. Dkt. 27-4 at 3(a). The arbitration clause, which is tied into the entire agreement as it seeks to subject "any dispute, controversy or claim arising out of or relating to this Agreement" to binding arbitration. Dkt. 27-4 at 3(a). Defendants misrepresent the scope of the law in the arbitration clause, making it fraudulent and unenforceable.

4.    <u>This Court, by the terms of the agreements, must decide whether a Class can</u>

15

proceed in this Court.

The Agreement states that in "any case in which (1) a dispute is filed as a class, collective, and/or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable […] the class, collective, and/or representative action shall be litigated in a civil court of competent jurisdiction." Dkt. 27-4 at 3(e). This Court must make such a determination as the arbitrator has no authority to consider any class or collective controversy: "The arbitrator shall not have the authority to consolidate this arbitration with any other arbitration proceeding, to join it with any other cases or parties or to conduct a class-wide arbitration." Dkt. 27-4 at 3(d). Defendants agree that issues presented here, including arguments about the Class Waiver, must be answered by the Court and not delegated to the Arbitrator. Dkt. 26 at p. 18. This is a threshold issue that can only be determined by this Court.

5.      The collective action Waiver is not enforceable.

The dispute in this case focuses on whether a company should force thousands of employees to operate as independent contractors, and to waive a statutory right to a collective action under 216(b) via a coercive 'take-it-or-leave-it' arbitration agreement. As Justice Ginsberg aptly noted,

> Individually, their claims are small, scarcely of a size warranting the expense of seeking redress alone […] joining together with others similarly circumstanced, employees can gain effective redress for wage underpayment commonly experienced […] To block such concerted action, their employers required them to sign, as a condition of employment, arbitration agreements banning collective judicial and arbitral proceedings of any kind. *Epic Systems Corporation v. Lewis*, 584 U.S. 497, 526 (2018) (J. Ginsberg, dissenting).

Proceeding as a collective action is not a matter of convenience, it is a matter of right.[9]

---

[9] As is discussed in depth later, 216(b) is the Remedies section of the FLSA. This begs the question of "to what extent can a company prevent a person's access to remedies by demanding arbitration?" If a Plaintiff were subject to an arbitration agreement stating that "no claim for liquidated damages may be brought in arbitration," would such a provision be enforceable? If not, what makes that remedy distinct from the remedy for collective action proceedings? A collective action is not the same as a Rule 23 procedural mechanism.

16

216(b) provides that Plaintiffs can and must be allowed to notify coworkers about illegal wage practices, acting almost as a form of injunctive relief.  Stated differently, companies can 'get away with it,' if Plaintiffs are prevented from providing notice and from proceeding as a collective action.  For one, the dissemination of information is significantly more challenging without Court support, and, as well, Defendants, knowing they can avoid such a notice by demanding every person sign an arbitration agreement with a Waiver, are without an incentive to stop practices.  216(b) is a remedy and deterrent, which the Waiver seeks to completely obliterate.

*Epic Systems* has generated a number of raised eyebrows by courts and practitioners alike.  In fact, even Judge Gorsuch, in his opinion, opined curiosity: "[Plaintiffs] do not offer the seemingly more natural suggestion that the FLSA overcomes the Arbitration Act to permit their class and collective actions. Why not?"  *Id*. at 515.[10]  The Eleventh Circuit wrote at length about the opt-in procedures in 216(b), and further noted "[c]ollective actions under section 216(b) benefit plaintiffs by allowing them to pool resources and benefit the judicial system by promoting the efficient resolution of common issues."  *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1340 (11th Cir. 2023).  This would never happen if Defendants' Waiver was found to be enforceable, and 216(b) would be gutted with respect to collective actions.

Beyond the convenience factor of 216(b), it is, in fact, a substantive right in that "an individual who seeks to join a Fair Labor Standards Act suit that was filed as a collective action must affirmatively opt in by filing with the court his written consent to join the action."  *Id*. at

---

[10] Later going on to speculate that "Presumably because this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does *not* displace the Arbitration Act or prohibit individualized arbitration proceedings."  This was challenged, however, in *Lambert v. Tesla, Inc.*, where the Court addressed that in *Gilmer* "The Court held that they could, but noted that **all statutory claims may not be appropriate for arbitration."**  923 F.3d 1246, 1249 (6th Cir. 2019) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

1339 (citing *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1275-1276 (11th Cir. 2018)). The entire purpose, then, of the inclusion of the collective action language in the FLSA is for the dissemination of notice, and for the right to opt in, both of which are detailed as remedies. Defendants' Agreement prevents Plaintiffs and collective members exercising this important statutory right to proceed as a group and includes all claims, even economically nominal ones.

The FLSA's collective action remedy under 216(b) is a substantive, statutory right unlike the litigation convenience procedural right found in Fed. R. of Civ. Pro. 23. There is, then, in this arbitration clause, a complete bar to Plaintiff's substantive FLSA remedies and rights under 216(b). Plaintiffs have a right to notify coworkers about this collective action under 216(b) and those coworkers have a right under the FLSA to opt-in. Denying Plaintiffs the right to move for collective status would bar their rights, and the rights of all of Defendants' employees, who share Plaintiff's claims. In creating the "'effective vindication' exception, [the Court] expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] ... as a prospective waiver of a party's right to pursue statutory remedies.'" *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235 (2013). This Court should follow that very logic here.

*Italian Colors Restaurant* involved class claims, under Rule 23, about American Express payments, and relied on antitrust law, "The Sherman and Clayton Acts [which] make no mention of class actions." *Id.* at 234. The Court discussed the effective vindication exception to describe that "the exception finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* at 235. While the Sherman and Clayton acts are not statutes with collective rights and remedies, the FLSA is such a statute. Section 216(b), where the collective action provision is found, *is* the remedies section. The Agreements and Waivers at

18

issue in this case <u>completely and unequivocally</u> try to strip Plaintiffs, and all other coworkers, of this right.[11]  Therefore, if this case is sent to arbitration, there can be no effective vindication of Plaintiff's rights under 216(b).

Unlike the case here, the Court in *Italian Colors Restaurant* noted "[t]he class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."  Here, <u>every single employee</u> with the same claims as Plaintiffs is limited from joining a collective action, and Plaintiffs are no longer afforded the right to inform those employees of the illegal activity.  Even *Epic Systems* is not squarely on point with this legal issue, as that case involved the National Labor Relations Board stepping "in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act)." *Epic Systems*, 584 U.S. at 515.  In *Epic Systems* the Court discussed, in dicta, case law and the FLSA, but ultimately held that "[w]hile Congress is of course always free to amend this judgment, we see nothing suggesting it did so in the *NLRA*." *Id.* at 525 (emphasis added).  As well, the arbitration agreements in *Epic Systems* and *Italian Restaraunts* were otherwise enforceable but for the arguments around class waivers; radically different than the arbitration agreements in this case.

To hold that the FLSA confers a substantive right that cannot be waived by an arbitration agreement would not be to throw out the entirety of *Epic Systems*.  The Court seemed to be eager to reach the question of whether the FLSA allows for waivers of collective actions, yet had to settle for ruling on the NLRA.  Defendants will likely cite to older cases in this Court, stemming

---

[11] This also, however, begs the question of what persons are subject to this same Agreement and/or Waiver.  If another employee is not subject to arbitration, and brings the same claim, should Plaintiff be precluded from opting into that lawsuit?  Would either, neither, or both be subjected to arbitration?  Such a ruling would jeopardize the entire basis for the FLSA's collective action provision.

19

from *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2nd Cir. 2013), where collective action Waivers were upheld, but "three years after its decision in *Sutherland*, the Second Circuit stated that if it were writing on a clean slate, it might 'well be persuaded' to join the Seventh and Ninth Circuits in finding that a waiver of collective action is unenforceable." *Gold v. New York Life Ins. Co.*, 153 A.D.3d 216, 223 (App. Div., 1st Dep. 2017) (citing *Patterson v. Raymours Furniture Company, Inc.*, 659 Fed Appx 40 (2nd Cir. 2016)). Plaintiffs urge that, to the extent any question about the Waiver's enforceable has been answered by this Court (but noting that *Epic Systems* and *Italian Restaraunts* are not squarely on point), Plaintiffs advocate for a change in the law to comply with the plain language of the FLSA and to satisfy public policy in upholding statutory rights.

## Conclusion

Defendants' Motion must be denied in its entirety. The Agreements at Dkt. 27.1-7 are illegal, void, and contain unenforceable arbitration clauses that are a product of fraud. The Agreements violate the public policy of New York, not simply because of the wage violation, but because they so blatantly strip thousands of employees of their rights to Workers' Compensation, unemployment insurance benefits, and demand that employees overpay in taxes.

Dated: New York, NY
January 16, 2025

**HARMAN GREEN PC**

By: _____

Evan Richardson
824 Exposition Ave., Suite 8
Dallas, Texas 75226
(646) 248-2288
erichardson@theharmanfirm.com

20

*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record pursuant to this Court's

electronic filing system.

_____

Evan Richardson