**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
JOEL GUERRERO, MIKE MOISE, JOSE
DIAZ MUHAMMED SESAY, JUNIOR
JANVIER, and OMAR JEROME, on behalf
of themselves and others similarly
situated,

                         **24 Civ. 6727 (JHR) (GS)**

           Plaintiffs,

                         **OPINION & ORDER**

         -against-

GOPUFF, GOBRANDS, INC., YAKIR
GOLA, RAFAEL ILISHAYEV, and GB
LOGISTICS, LLC,

                 Defendants.
-----------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Plaintiffs Joel Guerrero, Mike Moise, Jose Diaz, Muhammed Sesay, Omar

Jerome and Junior Janvier (collectively, "Plaintiffs") bring this action against

Defendants GoPuff, GoBrands, Inc., Yakir Gola, Rafael Ilishayev, and GB Logistics

LLC (collectively, "Defendants") alleging, *inter alia*, that Defendants failed to pay

both wages owed and minimum wages, and misclassified Plaintiffs as independent

contractors, in violation of the Fair Labor Standards Act ("FLSA") and the New

York State Labor Law ("NYLL").  (*See* Dkt. No. 19 ("Am. Compl." or "Amended

Complaint")).  Before the Court are (1) Defendants' motion to compel individual

arbitration of Plaintiffs' claims and to dismiss the action pursuant to the Federal

Arbitration Act and Rule 12(b)(3) of the Federal Rules of Civil Procedure (Dkt. No.

23); and (2) Plaintiffs' letter-motion to compel discovery pertaining to Defendants'

arbitration practices prior to resolution of Defendants' motion to compel arbitration

(Dkt. No. 39).  For the reasons set forth below, Defendants' motion to compel arbitration is **GRANTED**; Plaintiffs' motion for discovery is **DENIED**; and this action is **STAYED** pending arbitration.[1]

## BACKGROUND

### A.    The Parties and Plaintiffs' Claims

Plaintiffs are residents of New York who worked as GoPuff[2] delivery drivers in New York City.  (Am. Compl. ¶¶ 7–13, 27–32).  GoPuff is a delivery service operated by Defendant GoBrands, Inc. ("GoBrands"), which delivers a range of products to customers from local micro-fulfillment centers.  (*Id.* ¶¶ 2, 15; Declaration of Jordan Holtzman-Conston (Dkt. No. 27 ("Holtzman-Conston Decl.")) ¶ 2).  Defendant GB Logistics LLC ("GB Logistics") is alleged to be a holding company that is "affiliated directly and intimately with GoPuff."  (Am. Compl. ¶ 18; *see* Holtzman-Couston Decl. ¶ 4).  Defendants Yakir Gola and Rafael Ilishayev allegedly "operate GoPuff and all affiliates as one and the same, and have ultimate control and discretion on how and when employees [(including Plaintiffs)] are paid." (Am. Compl. ¶ 34).

---

[1] On August 11, 2025, the Honorable Jennifer H. Rearden referred this action to the undersigned for general pretrial supervision, including non-dispositive motions, as well as Defendants' motion to compel arbitration and to dismiss.  (Dkt. No. 41).  As discussed below, Defendants acknowledge that their motion to dismiss is effectively moot in light of Plaintiffs' request for a stay in the event that arbitration of their claims is compelled.  Consequently, this Court concludes that Defendants' motion is non-dispositive and, as such, decides it by Opinion & Order rather than issuing a Report & Recommendation.  "The prevailing view among district courts in this Circuit is that a motion to compel arbitration is non-dispositive, and therefore may be decided by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), rather than requiring a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b)."  *McCrae v. Oak St. Health, Inc.*, No. 24 Civ. 1670 (JPO), 2025 WL 415389, at *2 (S.D.N.Y. Feb. 6, 2025).

[2] Although Plaintiffs name "GoPuff" as a defendant (*see* Am. Compl. ¶ 14), Defendants state that this is in error as there is no legal entity named "GoPuff."  (Dkt. No. 26 at 1 n.1).

Customers can order goods for delivery via a GoPuff-branded mobile application or GoPuff's website.  (Holtzman-Couston Decl. ¶ 4).  When a customer submits an order for delivery, goDrive, a website and smartphone application operated by GB Logistics, generates a delivery request which is accessible to GoPuff "delivery partners," such as Plaintiffs, who in turn may fulfill the delivery request, delivering prepared orders from the fulfillment centers to customers.  (*Id.* ¶¶ 4–8).

Plaintiffs allege that they were "improperly paid as independent contractors, on a 1099, but they are, in all things, employees of Defendants."  (Am. Compl. ¶ 41).  Their employee status is allegedly evidenced by, *inter alia*, their working up to 12 hours per day for Defendants; Defendants' control over Plaintiffs' work responsibilities and tracking of Plaintiffs' locations during their deliveries; Plaintiffs' lack of discretion in performing their duties; and Plaintiffs' inability to earn income without Defendants' customers, administrative support, and name branding.  (*See id.* ¶¶ 41–59).

Plaintiffs allege that Defendants have "a long history of illegal employment practices," noting that Defendants were cited and fined $6.2 million by the Massachusetts Attorney General in 2023 for misclassifying GoPuff delivery drivers as independent contractors, among other labor violations.  (*Id.* ¶¶ 33, 43).[3] Plaintiffs allege that Defendants "force [Plaintiffs] to accept a lower wage than the law requires."  (*Id.* ¶ 36).  On average, Plaintiffs allege, they make less than $10 per

---

[3] Office of the Attorney General for the State of Massachusetts, *AG's Office Issues $6.2 Million in Citations Against National Delivery Service Company Over Employee Misclassification Violations*, March 30, 2023, https://www.mass.gov/news/ags-office-issues-62-million-in-citations-against-national-delivery-service-company-over-employee-misclassification-violations.

hour, inclusive of tips, and are never paid overtime or a living or minimum wage. (*Id.* ¶¶ 60–63).

The Amended Complaint asserts four causes of action, against all Defendants, for (1) failure to pay minimum wages under the FLSA (*id.* ¶¶ 88–94); (2) failure to pay minimum wages under the NYLL (*id.* ¶¶ 95–99); (3) failure to pay overtime under the FLSA, the NYLL, and New York City local laws (*id.* ¶¶ 100–05); and (4) misclassification of employees as independent contractors under the FLSA and New York law (*id.* ¶¶ 106–13).  Plaintiffs bring these claims both on behalf of themselves individually and on behalf of an FLSA collective consisting of all GoPuff delivery drivers who reside and/or deliver for Defendants in New York City.  (*Id.* ¶¶ 3, 19–25).  Since the action was commenced, three other GoPuff delivery drivers (Stephen Campbell, Chernor Sow, and Daryl Walker) have filed consent forms joining the action as Plaintiffs.  (Dkt. Nos. 45–47).[4]

### B.      The Independent Contractor and Arbitration Agreement

Before taking up delivery jobs via goDrive, "delivery partners" must first enter into an Independent Contractor and Arbitration Agreement.  (*See* Holtzman-Couston Decl. ¶ 10 and Ex. A ("Agreement" or "Agmt.")).[5]  To become a delivery partner, an individual must click through a web application, answering survey questions and identifying their preferred geographic delivery area.  (*Id.* ¶ 11).  After

---

[4] Plaintiffs have filed a motion for conditional certification of an FLSA collective.  (Dkt. No. 34). Further briefing on that motion has been held in abeyance pending a decision on Defendants' motion to compel arbitration.  (Dkt. Nos. 38, 44).

[5] For convenience, only the Agreement signed by Plaintiff Joel Guerero is referred to in this Opinion & Order (*see* Holtzman-Couston Decl. Ex. A), but the content of the Agreements signed by all other named Plaintiffs is identical.

completing the web application, candidates receive a "Review and Sign" prompt to a hyperlink inviting the candidate to review and sign the Agreement.  (*Id.* ¶ 12). Timestamps are kept of both the time the Agreement was electronically opened and when it was signed.  (*Id.*).

Each of the Agreements before the Court is between GB Logistics and an individual Plaintiff, described in the Agreement as a "Delivery Professional" or, for short, "Professional."  (*E.g., id.* Ex. A at 1, 12).  Spanning 12 single-spaced pages and 20 different sections (many with subsections), the Agreement establishes the terms governing the parties' relationship, including the terms under which delivery services are provided by the "Professional."  (Holtzman-Couston Decl. ¶ 10).  The Professional is required to "agree[] and acknowledge[] that it is in business for itself and that Professional is choosing to enter into an independent contractor relationship with GB Logistics in its capacity as such."  (Agmt. § 4).[6]

The Agreement also includes a nearly three-page Arbitration Provision (Agmt. § 3 ("Arbitration Provision")) which requires the parties to arbitrate:

- "any dispute, controversy or claim arising out of or relating to th[e] Agreement, including any question regarding its breach, termination, enforcement, interpretation or validity";

---

[6] The use of "its" and "itself" suggests that the "Professional" is an entity rather than a person, as does the Agreement's recital that "Professional conducts business as an independent entity providing the Delivery Services, and holds itself out as such." (Agmt. at 1).  Yet each of the Agreements is signed by the Plaintiff individually, not on behalf of any entity.  None of the Agreements even mentions an entity owned by or associated with any Plaintiff.

- all "disputes between Professional and GB Logistics' fiduciaries, administrators, affiliates, subsidiaries, [and] parents . . ., including, but not limited to, any dispute, controversy, or claim arising out of [or] relating to th[e] Agreement or Professional's relationship with GB Logistics"; and

- all "disputes regarding any city, county, state or federal wage-hour law[.]"

(Agmt. § 3(a)).  The Agreement further provides that affiliates of GB Logistics, including "current and former parent companies, subsidiaries, and other affiliated companies, as well as any of their respective current and former officers, directors, employees, [and] agents," are intended "third-party beneficiaries of th[e] Agreement, including the Arbitration Provision."  (Agmt. § 22(d)).

The Arbitration Provision includes what is commonly referred to as a delegation clause, which provides: "The arbitrator shall have the exclusive authority to [] determine the scope of, and resolve any dispute related to, the applicability, enforceability, revocability or validity of th[e] Arbitration Provision or any portion thereof."  (*Id*. § 3(d) ("Delegation Clause")).

In addition, the Arbitration Provision includes a class and collective action waiver clause, which requires that all claims and disputes within the scope of the Arbitration Provision must be arbitrated or litigated "on an individual basis and not on a class basis," and prohibits the Professional from joining or consolidating his or her claims with those of anyone else.  (*Id*. § 3(e) ("Collective Action Waiver")).

Arbitrations pursuant to the Arbitration Provision are to be conducted by JAMS (Judicial Arbitration & Mediation Services), at a location no more than 45 miles from the place where the Professional last provided delivery services to GoPuff.  (*Id.* § 3(b)).[7]  Plaintiffs and GB Logistics have equal rights over the selection of the arbitrator (with Plaintiffs enjoying an option to make the first strike).  (*Id.* § 3(c)).  The Arbitration Provision ensures the parties' rights to conduct discovery, bring dispositive motions, and present witnesses and evidence.  (*Id.* § 3(h)(b)).

Although the Arbitration Provision is unclear as to the parties' respective share of the responsibility for paying arbitration fees where a Professional seeks $5,000 or more (*see id.* § 3(i)),[8] Defendants have advised the Court that under JAMS' rules for disputes raising employment-related claims, "the default rule is that the employer pays for the forum fees."  (Transript of Oral Argument, Oct. 14, 2015 ("Tr."). at 8:5–21; *see also id.* at 30:15–22 (Plaintiffs' agreeing that under JAMS' rules for employment-related disputes, the employer pays JAMS' fees except for a $400 filing fee)).[9]  Defendants have also advised the Court that neither the

---

[7] JAMS is a well-regarded mediation and arbitration firm stocked with well-qualified neutrals including numerous former judges.  There is no reason to believe, and Plaintiffs do not allege, that a JAMS arbitration would be biased in favor of the employer.

[8] If the Professional's claim is for less than $5,000, then the Professional's share of the filing and arbitration fees is limited to $50.  (*Id.*).  The Professional may be subject to paying higher fees if the claim is determined to be frivolous or brought for an improper purpose under the standards set forth in Rule 11(b) of the Federal Rules of Civil Procedure.  (*Id.*).

[9] The Court has confirmed that under Rule 31(c) of JAMS' Employment Arbitration Rules and Procedures (available on the JAMS website, www.jamsadr.com), "the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee" (which is $400).  The Court also notes, however, that the Arbitration Provision does not reference JAMS' Employment Arbitration Rules and Procedures, but instead states that the arbitration will be administered pursuant to JAMS' Comprehensive Arbitration Rules and Procedures.  (Agmt. § 3(b)).  Under Rule 31(a) of the

7

Agreement nor JAMS' rules imposes any confidentiality obligation that would restrict Plaintiffs from communicating with other GoPuff delivery drivers in the event Plaintiffs receive a favorable outcome in arbitration.  (*Id.* at 51:16–53:18).[10]

### C.      Defendants' Motion to Compel Arbitration

On December 16, 2024, Defendants filed the instant motion seeking an order compelling Plaintiffs to bring their claims in a binding arbitration proceeding, pursuant to the Arbitration Provision, and dismissing the Amended Complaint. (Dkt. No. 23).  The motion was accompanied by a supporting brief (Dkt. No. 26 ("Def. Br.")) and Declarations from Defendants' counsel, Jason Burns (Dkt. No. 24) and from Senior Director of Delivery Operations for GoBrands, Inc. d/b/a GoPuff, Jordan Holtzman-Conston (*i.e.*, the Holtzman-Conston Decl.), with the Agreements signed by each named Plaintiff attached as exhibits to the latter (*id.* Exs. A–G). Plaintiffs submitted their opposition brief on January 16, 2025 (Dkt. No. 31 ("Pl. Br.")), along with Declarations from their counsel, Evan Richardson (Dkt. No. 30), and Plaintiff Mike Moise (Dkt. No. 31-1 ("Moise Decl.")).  Defendants filed their reply brief on January 30, 2025.  (Dkt. No. 32 ("Def. Rep.")).

---

Comprehensive Arbitration Rules, the parties to the arbitration share JAMS' fees and expenses *pro rata*.  Based on Defendants' counsel's representations at oral argument, the Court understands that Defendants have agreed that the arbitration fees in this case will be governed by JAMS' Employment Arbitration Rules and that Defendants will pay the arbitration fees, save for the $400 filing fee.  (*See* Rule 1, JAMS' Employment Arbitration Rules and Procedures (stating that Rules apply to disputes "in which the Parties agree to use these Rules")).  If that proves not to be the case, Plaintiffs may apply to the Court for any appropriate relief.

[10] In other contexts, courts have found that cloaking the outcome of an FLSA suit in confidentiality is "contrary to public policy" to the extent it "prevent[s] the spread of information about FLSA actions to other workers . . . who can then use that information to vindicate their statutory rights."  *Lopez v. Ploy Dee Inc.,* No. 15 Civ. 647 (AJN), 2016 WL 1626631, at \*3 (S.D.N.Y. Apr. 21, 2016) (discussing confidentiality clauses in FLSA settlements).

Defendants argue that both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and relevant state laws mandate that Plaintiffs' claims be compelled to arbitration. (Def. Br. at 1). Specifically, they argue that the parties entered into a valid and binding arbitration agreement, *i.e.*, the Arbitration Provision of the Agreement (*id.* at 6–7), that the Arbitration Provision is enforceable under both the FAA and relevant state laws (*id.* at 11–12), and that the claims and disputes raised by Plaintiffs' Amended Complaint fall squarely within the scope of the Arbitration Provision and the Delegation Clause (*id.* at 7–8).

Plaintiffs' opposition brief replies that there was no binding Agreement to begin with, because the Agreement only binds independent contractors whereas Plaintiffs are in fact misclassified employees. (Pl. Br. at 6).[11] Because Plaintiffs' claims arise from their alleged employment by Defendants, rather than their mischaracterized relationship to GoPuff as independent contractors, Plaintiffs contend their claims do not, in fact, arise from or relate to the Agreement itself. (*Id.*).

Plaintiffs contend further that the Agreement and the Arbitration Provision are unenforceable for several reasons. First, Plaintiffs claim that "illegality 'taints the entire contract,'" because the Agreement illegally misclassifies employees as independent contractors, stripping Plaintiffs of their statutory rights as employees. (*Id.* at 10 (citation omitted)). Second, Plaintiffs argue that the unequal bargaining

---

[11] The Court notes that the pagination of Plaintiffs' opposition brief marks the first substantive page as page 3. The Court adheres to the pagination of Plaintiffs' opposition brief.

power between the parties, coupled with the fact that they were required to sign the Agreement without having the time or ability to understand the content of the Agreement, renders the Agreement unenforceable because it is unconscionable and against public policy.  (*Id.* at 12–15; *see* Moise Decl. ¶¶ 22 (indicating that many delivery partners do not speak English), 31–33 (indicating that Plaintiff Moise only took 3 minutes to read the document, without an attorney)).  Third, Plaintiffs argue that the Arbitration Provision is the product of fraudulent misrepresentation because it misrepresents the scope of the law.  (Pl. Br. at 15).

Defendants' reply brief argues that, as an initial matter, all of Plaintiffs' claims within the Amended Complaint and disputes raised by their opposition brief regarding the validity and enforceability of the Agreement and Arbitration Provision fall within the scope of the Arbitration Provision and the Delegation Clause, and so must be decided by an arbitrator, including those claims and disputes which derive from Plaintiffs' alleged misclassification as independent contractors.  (Def. Rep. at 1–5).  Because Plaintiffs do not specifically challenge the Arbitration Provision or Delegation Clause, Defendants contend that Plaintiffs' challenges to the validity and enforceability of the Agreement as a whole must be decided by an arbitrator.  (*Id.* at 3–4).

In addition, Defendants maintain that the Collective Action Waiver mandates the arbitration of Plaintiffs' claims on an individual basis.  (Def. Br. at 16–17).  Plaintiffs object that the Collective Action Waiver is unenforceable because it impermissibly acts as a prospective waiver of Plaintiffs' right to statutory

10

remedies under the FLSA.  (Pl. Br. at 16–20).  Defendants reply that Plaintiffs'

argument is foreclosed by controlling precedent holding that collective action

waivers are enforceable.  (Def. Rep. at 5–8).

After the motion to compel was fully briefed, Plaintiffs filed a letter motion to

compel discovery on July 29, 2025.  (Dkt. No. 39).  Plaintiffs state that an

"employee," unidentified in their letter, contacted Plaintiffs' counsel to "share

evidence of Defendants' internal counsel's retaliatory practices regarding

arbitration."  (*Id.* at 1).  Plaintiffs argue that discovery into such practices is

warranted.  (*Id.*).  Defendants filed a letter in opposition on August 1, 2025,

contending that "vague and anonymous allegations" of an unidentified GoPuff

driver provide no basis for further discovery.  (Dkt. No. 40 at 1).

The Court heard oral argument on October 14, 2025 concerning Defendants'

and Plaintiffs' respective motions.  (*See* Dkt. Entry dated Oct. 14, 2025).

## LEGAL STANDARDS

The FAA, which "reflects 'a liberal federal policy favoring arbitration

agreements,'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citations

omitted), dictates that any contract containing a binding arbitration provision "shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract," 9 U.S.C. § 2.  Section 4 of the FAA

provides that a "party aggrieved by the alleged failure, neglect, or refusal of another

to arbitrate under a written agreement for arbitration may petition any United

States district court . . . for an order directing that such arbitration proceed in the

11

manner provided for in such agreement[.]"  9 U.S.C. § 4.  "A party has 'refused to arbitrate' within the meaning of Section 4 if it 'commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.'" *Shenzhen Xingchen Xuanyuan Indus. Co. v. Amazon.com Servs. LLC*, 735 F. Supp. 3d 453, 461 (S.D.N.Y. 2024) (quoting *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004)).

"Arbitration is a matter of contract, and 'the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 828 (S.D.N.Y. 2020) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  "To rule on a petition to compel arbitration, the Court must decide two main issues: '(1) whether the parties agreed to arbitrate, and (2) if so, whether the scope of the agreement encompasses the claims at issue.'" *Abuda v. Strongblock*, No. 22 Civ. 10869 (LTS) (BCM), 2023 WL 6294205, at *4 (S.D.N.Y. Sept. 27, 2023) (quoting *Cornelius v. Wells Fargo Bank, N.A.*, No. 19 Civ. 11043 (LJL), 2020 WL 1809324, at *3 (S.D.N.Y. Apr. 8, 2020)); *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996).

The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022).  "Whether an arbitration agreement exists is a matter of state contract law." *Whyte v. WeWork Companies, Inc.*, No. 20 Civ. 1800 (CM), 2020 WL 3099969, at *3 (S.D.N.Y. June 11,

2020).  "This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed."  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original).  Accordingly, "[t]his burden may be satisfied by the actual production of the arbitration agreement." *Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024) (citation omitted).

"If the Court finds that the parties entered into an arbitration agreement, it must then determine 'whether the dispute at issue comes within the scope of the arbitration agreement.'"  *Id.* (quoting *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)).  "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).  Courts look to "ordinary principles of contract interpretation" under state law to assess whether the "particular dispute is covered by the language to which the parties agreed."  *Local Union 97 v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023).

"The Second Circuit has held that nothing in the FLSA evinces an intent from Congress to exempt claims brought under it from the broad policies of the FAA."  *Reyes v. Gracefully Inc.*, No. 17 Civ. 9328 (VEC), 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018).  Thus, "it is well-established that FLSA claims are arbitrable," and "the Second Circuit and courts in this District repeatedly have found FLSA claims to be arbitrable."  *Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26,

13

36 (S.D.N.Y. 2024); *see also Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) ("We conclude that FLSA claims are arbitrable[.]"); *Hernandez v. RNC Indus., LLC*, No. 21 Civ. 4518 (JS) (ST), 2024 WL 964932, at *5 (E.D.N.Y. Mar. 6, 2024) ("[I]t is well-established that FLSA and NYLL claims are arbitrable."); *Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 540 (E.D.N.Y. 2016) ("The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA.").

"In deciding a motion to compel arbitration, the Court applies a 'standard similar to that applicable for a motion for summary judgment.'" *Silver*, 724 F. Supp. 3d at 222 (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). As on a motion for summary judgment, the court therefore "consider[s] all relevant, admissible evidence submitted by the parties and . . . draw[s] all reasonable inferences in favor of the non-moving party.'" *EX.CO Techs. Ltd. v. Empire Med. Grp.*, No. 22 Civ. 6383 (MKV), 2023 WL 5035175, at *2 (S.D.N.Y. Aug. 8, 2023) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "'Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id.* (quoting *Meyer*, 868 F.3d at 74).

**DISCUSSION**

The Court first finds that an agreement to arbitrate exists, and that Plaintiffs' claims fall within the scope of the Arbitration Provision. Plaintiffs' challenges to the enforceability of the Agreement do not enable them to avoid the binding effect of the Arbitration Provision, but instead must be addressed by the arbitrator in the first instance. The Court further finds that the Collective Action Waiver is binding and enforceable and that Plaintiffs have failed to articulate a valid basis for seeking discovery. Accordingly, Defendants' motion to compel arbitration must be granted. This action will be stayed pending the arbitration.

**A.     The Parties Entered into an Agreement to Arbitrate**

The first question the Court must determine is whether Plaintiffs and Defendants agreed to arbitrate. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh*, 88 F.3d at 135. When determining whether the parties have entered into a valid agreement to arbitrate, "courts 'should apply ordinary state-law principles that govern the formation of contracts,'" and evaluate the allegations "'to determine whether they raise a genuine issue of material fact.'" *Sacchi v. Verizon Online LLC*, No. 14 Civ. 423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (citations omitted).

Here, the Agreement contains a choice of law clause which provides that the Agreement "shall be governed by and construed in accordance with" Delaware law. (Agmt. § 20(k)). Under Delaware law, "a valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Eagle Force*

15

*Holdings, LLC v. Campbell*, 187 A.3d 1209, 1212–13 (Del. 2018) (citation omitted). To the extent that Delaware law does not apply, the requirements under New York law are the same. *See Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 59, 8 N.Y.S.3d 1, 9 (1st Dep't 2015) (under New York law, "to establish the existence of an enforceable agreement, a [party] must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." (citing 22 N.Y. Jur. 2d, Contracts § 9)), *aff'd*, 31 N.Y.3d 100, 73 N.Y.S.3d 519, 96 N.E.3d 784 (2018).

Defendants contend that the parties entered into a valid and binding arbitration agreement, given the presence of an offer, acceptance and consideration with respect to the Agreement and its embedded Arbitration Provision. (Def. Br. at 6–7). Defendants specify that GB Logistics presented the Agreement to Plaintiffs, who in turn accepted the Agreement via electronic signature, and that the "Arbitration Provision applies [equally] to claims asserted by *either* party," and so the binding of both parties qualifies as consideration. (*Id.* at 7 (emphasis in original)). *See Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (holding that the applicable "[a]greement by itself contains sufficient consideration because . . . it mutually binds both parties to submit claims exclusively to arbitration"); *Meyer v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 00 Civ. 8339 (JSR), 2001 WL 396447, at *1 (S.D.N.Y. Apr. 18, 2001) ("[In] a contract to arbitrate disputes respecting employment, . . . the mutually binding nature of the arbitration clause constitutes valid consideration.").

Plaintiffs do not seriously dispute the satisfaction of the fundamental elements of a valid contract. Instead, they contend that the "Agreements are not contracts governing [Plaintiffs'] employment" because the Agreements explicitly state that they do not create an employer-employee relationship. (Pl. Br. at 6; *see* Agmt. § 4). Because the Agreement describes the "Delivery Professional" who is GB Logistics' counterparty as an independent contractor and an independent entity, Plaintiffs contend, "Plaintiffs, as employees, are not signatories to the Agreement." (Pl. Br. at 6; *see* Agmt. at 1). Plaintiffs characterize this as an issue of "'contract formation'" which "'cannot be delegated to an arbitrator'" to decide. (Pl. Br. at 7 (quoting *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 735 (Del. Ch. 2023)).

Plaintiffs' argument is strained and unconvincing. Plaintiffs indisputably *are* signatories to the Agreements. (Agmt. at 11). Whether or not the Agreements cover claims made by Plaintiffs in their alleged capacity as "employees" is a question concerning the *scope* of the Agreements, not whether a valid agreement exists in the first instance. Indeed, Plaintiffs evidently do not dispute that if they were suing for breach of the Agreement, or bringing some other claim consistent with their classification as independent contractors, the elements of an agreement to arbitrate would exist.

As Plaintiffs have raised no *bona fide* dispute concerning the existence of an agreement to arbitrate, the Court finds that Defendants have met their burden to show the existence of such an agreement.

### B.    The Arbitration Provision Covers Plaintiffs' Claims

Having found a valid agreement to arbitrate, the Court turns to the issue of whether Plaintiffs' claims fall within the scope of the Arbitration Provision of the Agreement. *See, e.g.*, *ACE Cap. Re Overseas Ltd.*, 307 F.3d at 28. "Just as courts look to general state law contract principles to determine whether parties have agreed to arbitrate, they look to general state law contract principles to interpret the scope of an arbitration provision." *Fayez-Olabi v. Credit Acceptance Corp.*, No. 21 Civ. 5443 (AMD) (LGD), 2022 WL 2918119, at *4 (E.D.N.Y. July 25, 2022).

In analyzing disputes over the meaning of a contract, Delaware courts "give priority to the intention of the parties" and "start by looking to the four corners of the contract to conclude whether the intent of the parties can be determined from its express language." *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009). Delaware law "compels courts interpreting contracts governed thereunder to look to the 'ordinary and usual meaning' of the language in a contract." *Celsius Network*, 2024 WL 1719633, at *5 (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). "Under Delaware law, where contract language is clear and unambiguous, the meaning of the contract is a matter of law for the court." *Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 157 (2d Cir. 2017) (collecting cases).

Here, the Agreement unambiguously states: "Except as otherwise stated in this Arbitration Provision, any dispute, controversy, or claim arising out of or relating to this Agreement, including any question regarding its breach,

18

termination, enforcement, interpretation or validity, or Delivery Services, shall be finally settled by arbitration." (Agmt. § 3(a)). It further unambiguously states that "this Arbitration provision also applies without limitation, and to the fullest extent permitted by law, to disputes regarding any city, county, state or federal wage-hour law. . . ." (*Id.*). All claims asserted in the Amended Complaint allege violations of the FLSA and/or the NYLL—which are, unquestionably, "state or federal wage-hour law[s]"—and seek damages for allegedly unpaid wages. (Am. Compl. ¶¶ 88–113 and p. 15 (request for relief)). Moreover, to the extent Plaintiffs allege that the Agreement misclassifies them as independent contractors (*see id*. ¶¶ 107–13; Pl. Br. at 7), this plainly raises a dispute or controversy "arising out of or relating to [the] Agreement." As such, Plaintiffs' claims fall squarely within the plain language of the Arbitration Provision compelling arbitration of such claims and disputes.

Plaintiffs nevertheless argue that this dispute "does not arise out of or relate to the Agreement" because the dispute "relates to Plaintiffs' work completed as employees," whereas the Agreements "govern a relationship between independent contractors and Defendants." (Pl. Br. at 6–7). But it is the Agreement that classifies Plaintiffs as independent contractors, so it is hard to see how the dispute does not arise out of relate to the Agreement. *See Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 79 (S.D.N.Y. 2023) (enforcing an arbitration agreement and finding that language requiring arbitration of "any claim . . . arising out of or relating to this Agreement" would "certainly includes claims . . . that [plaintiff's] independent contractor designation was improper and that she should have been paid time-and-

19

a-half for overtime"). Further, as Plaintiffs acknowledge, their argument is premised on the assertion that the Agreement's classification of them as employees renders the Agreement void and unenforceable. (Pl. Br. at 7 (arguing that "the law is clear that you cannot contract around the obligations imposed by" the FLSA and New York law and that the Agreement "would, entirely, erode these protections")). Questions regarding the "enforcement" or "validity" of the Agreement are also expressly confided to arbitration. (Agmt. § 3(a)).

In any event, Plaintiffs' argument does not even attempt to explain how their FLSA and NYLL claims are not encompassed by the Arbitration Provision's additional language mandating arbitration for "disputes regarding" federal and state "wage-hour law[s]." *See Medeiros v. Point Pickup Techs., Inc.*, No. 21 Civ. 1056 (OAW2023 WL 3022324, at *2–3 (D. Conn. 2023) (compelling arbitration of FLSA claims brought by delivery drivers who alleged they were misclassified as independent contractors, pursuant to arbitration clause covering disputes concerning, *inter alia*, allegations of "statutory wage and hour violations").

It is also clear that the Arbitration Provision covers not only Plaintiffs' claims against GB Logistics, but also their claims against GoBrands and the two individual Defendants (Yakir and Ilishayev). Although the latter three Defendants are not signatories to the Agreement, the Agreement provides that affiliates of GB Logistics, including but not limited to "current and former parent companies, subsidiaries, and other affiliated companies, as well as any of their respective current and former officers, directors, employees, [and] agents," are intended third-

20

party beneficiaries of the Agreement, "including the Arbitration Provision." (Agmt. § 22(d)). Defendants assert that GoBrands, as an affiliate of GB Logistics, and Yakir and Ilishayev, whom Plaintiffs allege operate these entities and are joint employers, are third-party beneficiaries entitled to invoke the Arbitration Provision. (Def. Br. at 13; *see* Am. Compl. ¶¶ 2, 18, 24). Plaintiffs do not contend otherwise.

Accordingly, the Court finds that Plaintiffs' claims fall within the scope of the Arbitration Provision.

### C.    The Enforceability Issues Raised by Plaintiffs Must Be Decided by the Arbitrator

In substance, Plaintiffs' arguments are primarily directed to the validity and enforceability of the Agreement and the Arbitration Provision. (Pl. Br. at 5). Plaintiffs contend that the Agreement is void and unenforceable because it is premised on illegality, procedurally and substantively unconscionable, and the product of fraud. (*Id.* at 5, 10–15). In mounting this challenge, Plaintiffs face an uphill climb, for two reasons.

First, "challenges to a contract containing an arbitration clause fall into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). "Challenges to the contract's validity are considered by the arbitrator in the first instance, 'unless the challenge is to the arbitration clause itself.'" *Inventory Generation Inc. v. Proventure Cap. Funding LLC*, No. 22 Civ. 10529 (PAE), 2023 WL 2609344, at *6 (S.D.N.Y. Mar. 23, 2023)

21

(quoting *Buckeye*, 546 U.S. at 445–46).  "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," *Buckeye*, 546 U.S. at 445, and so "courts may enforce arbitration agreements, even where an arbitrator later finds the contract void," *Inventory Generation Inc.*, 2023 WL 2609344, at *6.

Second, consistent with this case law, the Delegation Clause of the Arbitration Provision states that (except as otherwise provided within the Arbitration Provision) "*all issues* shall be decided by the arbitrator and not by a court or judge," and that this means the arbitrator has "exclusive authority" to "resolve any dispute related to" the "applicability, *enforceability*, revocability or *validity* of the Arbitration Provision or any portion thereof."  (Agmt. § 3(d) (emphasis added)).  "[C]ourts have consistently found clear and unmistakable delegation" of "gateway" issues of "arbitrability" based on similar language. *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 728 (E.D.N.Y. 2017). Unless a party challenges "the delegation provision specifically, [the court] must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

Against this legal backdrop, the Court proceeds to consider each of Plaintiffs' unenforceability arguments.

22

### 1. Illegality

Plaintiffs argue that "[t]he Agreements are illegal" because Plaintiffs were, in fact, employees rather than independent contractors and the Agreements "wrongfully denied Plaintiffs their statutory rights to employment benefits such as workers' compensation and unemployment benefits and, as well, demanded that Plaintiffs operate in a legal capacity that was not available to them so Defendants could both avoid paying minimum wage and employment related taxes," in violation of the FLSA and "numerous State and federal statutes preventing wage theft and tax fraud." (Pl. Br. at 11).

In support of their contention that they were employees, Plaintiffs rely on Plaintiff Moise's declaration, which asserts, *inter alia*, that he and other GoPuff delivery drivers do not hold themselves out as independent contractors, are unable to make a living but for their work for Defendants, do not control their own delivery schedules and are "huddled into cattle call style rooms as they await assignment," and cannot work for other delivery apps while working for Defendants. (Moise Decl. ¶¶ 5–9, 16–18, 25–26; *see* Pl. Br. at 4). In support of their contention that this arrangement runs afoul of the FLSA and other laws, Plaintiffs cite not only the Massachusetts Attorney General enforcement action finding that GoPuff misclassifies delivery drivers as independent contractors,[12] but also a 2020 decision

---

[12] Earlier this year, the Attorney General for the District of Columbia filed a similar lawsuit against GoBrands and GB Logistics, charging them with illegally failing to pay delivery drivers minimum wage, overtime, and paid sick leave by misclassifying them as independent contractors rather than employees. Office of the Attorney General for the District of Columbia, *Attorney General Schwab Sues Gopuff for Workers' Rights Violations*, March 19, 2025, https://oag.dc.gov/release/attorney-general-schwalb-sues-gopuff-

by the New York Court of Appeals, *Matter of Vega*, 35 N.Y.3d 131, 125 N.Y.S.3d 640, 149 N.E.3d 401 (2020), finding that delivery couriers for a similar online delivery service were employees, rather than independent contractors, under the NYLL for unemployment compensation purposes.  (Pl. Br. at 3, 7–10).

On the merits, Plaintiffs may well have a strong argument that they were unlawfully classified as "independent contractors," though Defendants dispute this. (*See* Tr. at 12:22–13:11).  The difficulty Plaintiffs face is that this motion is not about the merits of their claims.  It is about who, in the first instance, should decide the merits of their claims, including their claim that the Agreements unlawfully misclassify them as independent contractors.  And on that issue, the law, as well as the Delegation Clause, are clear: "Challenges to the contract's validity are considered by the arbitrator in the first instance, 'unless the challenge is to the arbitration clause itself.'"  *Inventory Generation Inc.*, 2023 WL 2609344, at \*6 (quoting *Buckeye*, 546 U.S. at 445-46).  However compelling Plaintiffs' argument may be regarding their misclassification, it is an argument directed at the legality of the Agreement *as a whole*, not an argument directed to the validity of the Arbitration Provision or the Delegation Clause in particular.  It is, therefore, a matter for the arbitrator to decide.  *See id.* at \*6–7 (compelling arbitration pursuant to arbitration clause, despite plaintiff's contention that agreement was usurious and

---

workers#:~:text=OAG%27s%20lawsuit%20seeks%20to%20end,civil%20penalties%20to%20the%20District.

thus "illegal" and "void *ab initio*," as "those challenges are properly resolved by the arbitrator in the first instance").

Plaintiffs' citations to cases standing for the proposition that illegal contracts are void and unenforceable do not help them on this motion, as none of these cases involved a question of arbitrability. (Pl. Br. at 10–11 (citing *R.R. v. H.S.*, 47 Misc. 3d 624, 626, 121 N.Y.S.3d 588 (Dist. Ct. Suffolk Cnty. 2020); *Carmine v. Murphy*, 285 N.Y. 413, 35 N.E.2d 19 (1941); *Remington Rand v. International Business Mach. Corp.*, 167 Misc. 108, 118, 3 N.Y.S.2d 515 (Sup. Ct. N.Y. Cnty. 1937); *Stone v. Freeman*, 298 N.Y. 268, 271, 82 N.E.2d 571 (1948); *Murphy v. Heartshare Human Servs. of N.Y.*, 254 F. Supp. 3d 392, 405 (E.D.N.Y. 2017))).  Plaintiffs fail to cite a single case where a challenge to the legality of the underlying contract was held sufficient to deny a motion to compel arbitration.  And although Plaintiffs contend that the Second Circuit's decision in *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26 (2d Cir. 2001), supports that conclusion, Plaintiffs are mistaken. (*See* Pl. Br. at 11).

In *Sphere Drake*, the Second Circuit indicated that an arbitration clause in a contract that is not merely "voidable," but "void," may not be enforceable.  *See* 263 F.3d at 31.  But *Sphere Drake* was speaking of contracts that are "void" because no contract was validly *formed*, in that case because the agent who negotiated the contracts allegedly lacked both actual and apparent authority.  *Id.* at 32 (noting that if the agent lacked such authority, then "the principal is not bound to the contract, for the contract is void—it never came into legal existence"); *see also*

*Telenor Mobile Commcn's AS v. Storm LLC*, 584 F.3d 396, 406 n.5 (2d Cir. 2009)

(describing *Sphere Drake* as standing for the proposition that "questions about

whether a contract was ever made" are presumptively to be decided by the court

even without a specific challenge to the arbitration clause); *Denney v. BDO*

*Seidman, L.L.P.*, 412 F.3d 58, 68 (2d Cir. 2005) (noting that the rule in *Sphere*

*Drake* "protect[s] parties from arbitration only in those narrowly-limited

circumstances where the very existence of a contract is in doubt").

Sphere Drake does not mean that where the existence of the contract is not in

doubt, a party can avoid arbitration by claiming that the contract is "illegal" and

hence "void."  Any such reading of *Sphere Drake* would be foreclosed by the

Supreme Court's subsequent decision in *Buckeye*, which squarely holds that a

challenge to the validity of the underlying contract based on a claim of illegality

(there, that the contract was usurious) must be decided by the arbitrator.  *See*

*Buckeye*, 546 U.S. at 444; *see also Convergen Energy LLC v. Brooks*, No. 20 Civ.

3746 (LJL), 2020 WL 4500184, at *6 (S.D.N.Y. Aug. 5, 2020) ("The Supreme Court

has . . . ruled that the issue of the validity of a contract—which does not invalidate

an arbitration clause—is different from the issue of whether an agreement was

actually formed between the parties." (citing *Buckeye*, 546 U.S. at 444 n.1)); *Doctor's*

*Associates, Inc. v. Kirksey*, No. 18 Civ. 963 (JCH2018 WL 6061573, at *4 (D. Conn.

2018) (noting that "[t]he Supreme Court has expressly distinguished between the

issue of a contract's 'validity'—which can be delegated to the arbitrator through a

delegation clause," including where there is a dispute over "whether the contract

26

containing the arbitration clause . . . has been rendered invalid by the illegality of one of its provisions"— "from the issue of a contract's formation, which must be decided by the court" (citations omitted)).

Here, Plaintiffs' claim of illegality plainly presents an issue of contract validity, not contract formation as in *Sphere Drake*, and it is directed at the Agreement in its entirety and to those provisions describing Plaintiffs as independent contractors.  But "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr.* 561 U.S. at 70.  Accordingly, Plaintiffs' illegality argument fails to defeat Defendants' motion to compel arbitration.

### 2. Unconscionability

Plaintiffs also argue that the Agreement, taken as a whole, is unconscionable. (Pl. Br. at 12–15).  Plaintiffs claim the Agreement is procedurally unconscionable given the inequality in bargaining power between Plaintiffs and Defendants and the fact that the Agreement does not contain any provisions about consulting with attorneys, does not require that Plaintiffs actually read the Agreement, and is not presented in any language other than English.  (*Id.* at 14).  Plaintiffs also claim the Agreement is substantively unconscionable "given how strongly it favors Defendants," in part because it allows for Plaintiffs to be "paid well below minimum wage" despite requiring Plaintiffs to "assume all liabilities from the work performed," and because it contains an indemnification clause which, according to Plaintiffs, requires them to "indemnify Defendants for the illegal acts Defendants

27

have committed against them" by misclassifying them as independent contractors. (*Id.* at 14–15).[13]

This argument fails for essentially the same reasons that Plaintiffs' illegality argument fails. All of Plaintiffs' unconscionability arguments, whatever their merits, challenge the enforceability of the Agreement *as a whole*, rather than the Arbitration Provision specifically. As noted above, disputes regarding the validity and enforceability of the Agreement fall within the "exclusive authority" of the arbitrator under the Delegation Clause in the Arbitration Provision, and so Plaintiffs' challenge based on the purported unconscionability of the Agreement must be delegated to and decided by an arbitrator.

In *Rent-A-Center*, a plaintiff suing her former employer argued that an agreement requiring arbitration of her claims was unconscionable and hence unenforceable. 561 U.S. at 66. However, as here, a delegation clause gave the arbitrator "exclusive authority" to resolve disputes regarding the "enforceability" of the arbitration agreement. *Id.* The Supreme Court held that because the plaintiff's unconscionability arguments challenged the validity of the arbitration agreement as a whole, and not the validity of the delegation clause specifically, the delegation clause must be enforced and the unconscionability issue must be decided by the arbitrator. *Id.* at 72-74. *Rent-A-Center* requires the same result here, as Plaintiffs'

---

[13] Plaintiffs' reading of the indemnification clause appears to be contradicted by the indemnification clause itself, which states: "This indemnification provision shall not apply to Professional's breach of any representations regarding your status as an independent contractor." (Agmt. § 12; *see also* Tr. at 50:14–25 (Defendants' counsel's representation that Defendants would not take the position ascribed to them by Plaintiffs' argument)).

unconscionability argument likewise is not directed at the Delegation Clause—or even at the Arbitration Provision.

Plaintiffs rely on *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002), which found an arbitration agreement between an employee and her employer to be unconscionable and denied the employer's motion to compel arbitration.  (Pl. Br. at 14).  But the agreement in *Brennan* was a separate, standalone "Employee Dispute Resolution Agreement" which qualified as an "entire arbitration agreement" rather than "an arbitration clause within a contract."  *Id.* at 378–79.  Thus, unlike here, the plaintiff's unconscionability challenge went to the arbitration agreement specifically.  Moreover, unlike here, the arbitration agreement in *Brennan* did not contain a delegation clause (so far as appears from the court's opinion).  The Supreme Court's subsequent decision in *Rent-A-Center* makes clear that, where a delegation clause exists, an unconscionability challenge must be directed at that clause specifically to be judicially cognizable.  *See, e.g.*, *Kuehn v. Citibank, N.A.*, No. 12 Civ. 3287 (DLC), 2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012) ("[I]n light of a delegation agreement, a party's challenge to the arbitration agreement on unconscionability grounds is a dispute that must be resolved by arbitration unless the party opposing arbitration demonstrates that the delegation agreement itself is unenforceable.").[14]

---

[14] *Brennan* is distinguishable in other respects as well.  There, the plaintiff's sexual harassment complaint (which later became the subject of her lawsuit) was pending at the time the employer presented the arbitration agreement to her, using "high-pressure tactics" to get her and other employees to sign it by threatening that those who refused to sign would be ineligible for promotion. 198 F. Supp. 2d at 383-84.  The agreement also was unreasonably favorable to the employer because under its terms, the employer could "unilaterally modify the contract at any time, thus binding employees to a contract they may never have seen." *Id*. at 384.  Plaintiffs do not allege that such

### 3. Fraud

Lastly, Plaintiffs contend that the "arbitration clause in each Agreement is a product of fraud." (Pl. Br. at 15). By way of explanation, Plaintiffs assert that under the Arbitration Provision, Plaintiffs must arbitrate any dispute regarding "'wage-hour' laws," even though their classification as independent contractors suggests that they are not able to invoke wage-hour laws. (Pl. Br. at 15 (citing Agmt. § 3(a)). Thus, Plaintiffs argue that "Defendants misrepresent the scope of the law in the arbitration clause, making it fraudulent and unenforceable." (*Id.*).

Under the FAA, if a party opposing arbitration advances a claim of "fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). On the other hand, "[i]t is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration." *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002); *see also Coffer v. Serv. Asset Mgmt. Co.*, No. 02 Civ. 9934 (DC), 2003 WL 22493425, at *3 (S.D.N.Y. Nov. 3, 2003) ("Courts distinguish between claims of fraudulent inducement of the contract as a whole and claims of fraud in the inducement of the arbitration clause. If a claim of fraudulent

---

circumstances exist here. *See, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 404 (S.D.N.Y. 2021) (distinguishing *Brennan*); *Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 34-36 (W.D.N.Y. 2020) (same).

inducement relates to the contract generally, and the contract contains an arbitration clause, the language of the FAA provides that the dispute must be adjudicated by the arbitrator." (citations omitted)).

On its face, Plaintiffs' fraud argument purports to be directed at the Arbitration Provision specifically.  But to prevail on such an argument, Plaintiffs must "demonstrate that the arbitration provision was induced by fraud and include particularized facts specific to the arbitration clause which indicate how it was used to effect the scheme to defraud. [The plaintiff] must also demonstrate that [the defendant] intentionally misrepresented a material fact and [the plaintiff] reasonably relied on that misrepresentation." *Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 197 (S.D.N.Y. 2006) (cleaned up).  Plaintiffs here have failed to make this showing.  The language in the Arbitration Provision upon which their fraudulent inducement argument relies—which suggests that Plaintiffs may be able to assert claims under "wage-hour" laws notwithstanding their classification under the Agreement as independent contractors—is not, according to Plaintiffs, a misrepresentation of law.  To the contrary, the entire thesis of Plaintiffs' lawsuit is that they *can* assert wage claims under the FLSA and NYLL notwithstanding their classification under the Agreement as independent contractors.  Those are precisely the claims Plaintiffs *have* asserted in this action.

It is readily apparent that Plaintiffs' claim of fraud is directed at the Agreement as a whole and not the Arbitration Provision itself.  What Plaintiffs claim is false is the Agreement's classification of them as independent contractors.

31

(*See, e.g.*, Pl. Br. at 3, 8, 12, 13–14, 16). But nothing in the Arbitration Provision classifies Plaintiffs as independent contractors. That classification is set forth elsewhere in the Agreement, in particular in the recitals and in Section 4, but not the Arbitration Provision itself. (*See* Agmt. at 1 & § 4).

Thus, in substance, Plaintiffs' fraud claim *is* directed to the Agreement as a whole, and not to the Arbitration Provision itself. As such, this claim, too, must be resolved in the first instance by the arbitrator. *See, e.g.*, *Catz v. Precision Glob. Consulting*, No. 19 Civ. 7499 (ER), 2021 WL 1600097, at *8 (S.D.N.Y. Apr. 23, 2021) ("Since [plaintiff's] allegations of fraudulent inducement go to the enforceability of the contract as a whole and not to the enforceability of the arbitration clause in particular, her fraudulent inducement claim falls within the scope of the Employment Agreement's arbitration clause."); *Buckley v. Nat'l Football League*, No. 18 Civ. 3309 (LGS), 2018 WL 6198367, at *3 (S.D.N.Y. Nov. 16, 2018) (finding that plaintiffs' allegations that defendant "knowingly misrepresented that they were independent contractors, rather than employees," related to "the whole contract . . . rather than the Arbitration Clause" and hence were insufficient; "although Plaintiffs state that they are challenging the arbitration provision, the substance of their claim challenges the Agreements as a whole").

Further, even if Plaintiffs' fraud claim could be viewed as genuinely directed to the Arbitration Provision, they nowhere suggest that the *Delegation Clause* in particular was the product of fraud. For this independent reason as well, Plaintiffs' fraud challenge must be rejected. See, e.g., *Doctor's Associates, Inc. v. Alemayehu*,

32

No. 18 Civ. 276 (JCH), 2020 WL 13538883, at *5 (D. Conn. 2020) ("Because [plaintiff's] fraudulent inducement argument applies to the arbitration clause as a whole, rather than the delegation provision in particular, it is not sufficiently specific to avoid arbitration under *Rent-A-Center*.").

### D.    The Collective Action Waiver Clause Is Enforceable

Plaintiffs also argue that the Collective Action Waiver of the Arbitration Provision prevents them from effectively vindicating their rights under the FLSA and hence is invalid. (Pl. Br. at 16–20). Plaintiffs argue that they have a statutory right to pursue a collective action under Section 216(b) of the FLSA and that this right would be "completely obliterate[d]" if the Collective Action Waiver were given effect. (*Id.* at 17–18). Therefore, Plaintiffs contend, if this case is sent to arbitration, "there can be no effective vindication of Plaintiff[s'] rights under 216(b)." (*Id.* at 19).

As Defendants contend, Plaintiffs' argument runs afoul of clearcut Supreme Court and Second Circuit precedent. (*See* Def. Br. at 8, 16–17; Def. Rep. at 5–8).[15] Defendants rely principally on the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018). In *Epic Systems*, the Supreme Court upheld a class and collective action waiver in an arbitration agreement, explaining that in the FAA, "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."

---

[15] Consistent with language in the Arbitration Provision so providing (*see* Agmt. § 3(d), (e)), the parties agree that the enforceability of the Collective Action Waiver is an issue for this Court, not the arbitrator, to decide. (Def. Br. at 4; Pl. Br. at 16; Def. Rep. at 5).

*Id.* at 502.  As here, *Epic Systems* involved a litigant who alleged that his employer violated the FLSA by misclassifying him and similarly situated employees, thereby depriving them of overtime wages, and who wished to pursue this claim in court on behalf of an FLSA collective.  *Id.* at 503.  The Court held that he could not do so, because he and his employer had agreed to resolve any disputes between them through "one-on-one arbitration," and that agreement was enforceable.  *Id.* at 502.

Plaintiffs argue that *Epic Systems* "is not squarely on point" because it only rejected an argument that the National Labor Relations Act—not Section 216(b) of the FLSA—overrides the FAA's command to enforce arbitration agreements.  (Pl. Br. at 19).  But that was because the employees in *Epic Systems* did not argue that the collective action waiver was unenforceable under Section 216(b).  And the Court explained why (presumably) the employees did not make that argument: "because this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does *not* displace the Arbitration Act or prohibit individualized arbitration proceedings."  584 U.S. at 515 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (emphasis in original)).  The Court further noted that "'[e]very circuit to consider the question' has held that the FLSA allows agreements for individualized arbitration."  *Id.* (quoting *NLRB v. Alternative Entertainment, Inc.*, 858 F.3d 393, 413 (6th Cir. 2017) (Sutton, J., concurring in part and dissenting in part)).

One of those circuits was the Second Circuit.  *See Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296–97 (2d Cir. 2013) (concluding that "the waiver of

34

collective action claims is permissible in the FLSA context" and rejecting the argument that Section 216(b) creates a "right" to bring a collective action that prevents the arbitration agreement from being enforced).  Thus, even before *Epic Systems*, "Second Circuit precedent confirmed the validity and enforceability of arbitration agreements containing express collective action waivers."  *Qin Hui Li v. Wok 88 Inc.*, No. 17 Civ. 8715 (GHW), 2018 WL 3384441, at *5 (S.D.N.Y. July 11, 2018).  At the very least, *Epic Systems* reinforces that principle, which remains the law in the Second Circuit today.  *See, e.g.*, *Rusis v. Int'l Bus. Mach. Corp.*, 529 F. Supp. 3d 178, 196 (S.D.N.Y. 2021) (enforcing class and collective action waiver in arbitration agreement and citing *Epic Systems* and *Sutherland*); *Hedges v. United Parcel Serv. of Am., Inc.*, No. 20 Civ. 870 (BMC), 2020 WL 4481657, at *5 (E.D.N.Y. Aug. 4, 2020) (enforcing class and collective action waiver and stating that "the Supreme Court has resolved this issue" in *Epic Systems*).

Tacitly recognizing that their argument is foreclosed by controlling precedent, Plaintiffs are left to "advocate for a change in the law to comply with the plain language of the FLSA and to satisfy public policy in upholding statutory rights." (Pl. Br. at 20).  In support, Plaintiffs cite Justice Ginsberg's dissent in *Epic Systems*, decisions from the Seventh and Ninth Circuits that were reversed in *Epic Systems*, and a non-precedential summary order from a Second Circuit panel stating that "[i]f we were writing on a blank slate, we might well be persuaded" to hold a collective action waiver unenforceable—but ultimately concluding that "[w]e are bound by" *Sutherland* to enforce the waiver, *see Patterson v. Raymours Furniture Co.*, 659 F.

35

App'x 40, 43 (2d Cir. 2016).  (Pl. Br. at 16, 20).  Needless to say, this Court is also bound by *Sutherland*, and hence powerless to heed Plaintiffs' call.  Whatever the merits of Plaintiffs' arguments concerning the unlawfulness or unfairness of the Collective Action Waiver, under binding appellate precedent, the Collective Action Waiver must be enforced.

### E.  Plaintiffs' Motion to Compel Discovery Is Denied

In their July 29, 2025 letter motion seeking discovery, Plaintiffs state that an unidentified employee of GoPuff contacted Plaintiffs' counsel to "share evidence of Defendants' internal counsel's retaliatory practices regarding arbitration."  (Dkt. No. 39 at 1).  According to Plaintiffs, this information suggests that "Defendants have engaged in a pattern and practice of unconscionable behavior surrounding arbitration, including by using coercive and deceptive practices to create and enforce the agreements[.]"  (*Id.*).  Plaintiffs seek "limited discovery into whether Defendants rely on arbitration agreements in a coercive manner."  (*Id.* at 2).  Defendants oppose this request, arguing that "lobbing vague and anonymous allegations, with no connection to this matter, is not a valid basis for seeking unspecified discovery."  (Dkt. No. 40 at 1).

"Although the Court evaluates a motion to compel arbitration under a standard similar to that of a summary judgment action, the standards for evaluating discovery requests in the context of a motion for summary judgment and a motion to compel arbitration are not similar."  *Flores v. Nat'l Football League*, No. 22 Civ. 871 (VEC), 2022 WL 3098388, at *1 (S.D.N.Y. Aug. 4, 2022) (cleaned up).  In

particular, "given the 'strong federal policy favoring arbitration as an alternative means of dispute resolution,' courts do not grant discovery requests related to a motion to compel arbitration as a matter of course." *Id.* (quoting *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008)).

Plaintiffs' request for discovery is unfounded. As Plaintiffs' counsel acknowledges, the information they received about Defendants' alleged "retaliatory," "unconscionable," "coercive," and "deceptive" arbitration practices is based on the experiences of an unidentified GoPuff "employee" who is *not* one of the Plaintiffs in this action. (*See* Tr. at 24:25 ("it's not coming from our named plaintiffs")). To the extent evidence of such practices could serve as a basis for challenging enforcement of the Arbitration Provision, Plaintiffs would need to show that they experienced such practices personally. Evidence that other GoPuff employees were treated in an unconscionable or coercive or deceptive manner would not help show that *Plaintiffs'* Arbitration Provisions are invalid or unenforceable for these reasons.

Yet no Plaintiff claims that he was subjected to such treatment. The requested discovery thus would not be relevant in adjudicating Defendants' motion to compel. Accordingly, Plaintiffs' motion for discovery is denied. *See Flores*, 2022 WL 3098388, at *2 (denying plaintiffs' motion for discovery in aid of their opposition to motion to compel arbitration where "Plaintiffs have failed to carry their burden of offering 'facts or evidence to place the validity of the [a]greement to arbitrate in

37

issue' in their motion for discovery" (quoting *Morton v. Maplebear Inc.*, No. 15 Civ. 8879 (CM), 2016 WL 616343, at *5 (S.D.N.Y. Feb. 9, 2016))).

### F.    The Court Will Grant a Stay, as Plaintiffs Request a Stay

In their motion, Defendants requested that, after compelling arbitration, the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(3).  (Dkt. No. 23; Pl. Br. at 3).  However, the Supreme Court held last year that Section 3 of the FAA does not permit a district court to dismiss an action "when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024).  Rather, where such circumstances exist, Section 3 "compels the court to stay the proceeding." *Id.* at 478; *see* FAA § 3 (providing that the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had" (emphasis added)).  This ruling agreed with the position previously taken by the Second Circuit in *Katz v. Cellco Partnership*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that a stay is mandatory, and the district lacks discretion to dismiss the action, "after all claims have been referred to arbitration and a stay requested").

Although Defendants have not requested a stay, during oral argument, Plaintiffs expressly requested that "the case be stayed" if the Court were to grant the motion to compel arbitration.  (Tr. at 49:4).  Defendants concede that, because Plaintiffs have asked for a stay, a stay is required under the FAA as well as Supreme Court and Second Circuit precedent.  (Tr. at 19:12–21, 54:8–55:1).  Under

38

these circumstances, Defendants' earlier request to dismiss the action is deemed withdrawn, and the Court will, as required, stay this action pending arbitration.[16]

In *Smith*, the Supreme Court recognized that "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts" and that "[k]eeping the suit on the court's docket makes good sense in light of this potential ongoing role." *Smith*, 601 U.S. at 478. In this case, the Court's potential ongoing role may embrace a matter unique to FLSA actions. In *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Second Circuit held that private settlements of FLSA claims require approval of the court or the U.S. Department of Labor. Most courts in this Circuit have held that the *Cheeks* approval requirement applies to FLSA settlements reached while a case is stayed pending arbitration. *See Melendez v. Cosan Constr. Corp.*, No. 21 Civ. 7426 (BCM), 2023 WL 3336549, at *2 (S.D.N.Y. May 10, 2023) (stating that with the exception of one case, *Agha v. TForce Final Mile, LLC*, No. 17 Civ. 7301, 2018 WL 6982112 (S.D.N.Y. Dec. 26, 2018), "district courts within our Circuit have uniformly held that such a settlement must be reviewed for fairness just like any other FLSA settlement").

It would be premature for the Court to decide now whether a hypothetical settlement of Plaintiffs' claims while the case is stayed pending arbitration would

---

[16] In the alternative, should Defendants disagree that their motion to dismiss has been effectively withdrawn, and require a ruling thereon, the undersigned recommends that their motion to dismiss be denied, for the reasons set forth above. Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from today to file written objections to this recommendation.

require *Cheeks* approval.  When asked at oral argument, Defendants took the position that it is the arbitrator who should conduct a *Cheeks* review, not the court, unless the parties agree to submit the settlement for court approval.  (Tr. at 18:16–19:2).  While the Court refrains from ruling on this matter now, the parties are hereby directed to promptly notify the Court in the event a settlement is later reached, so that a determination may be made as to whether the settlement should be submitted for court approval pursuant to *Cheeks*.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to compel arbitration is **GRANTED.**  Plaintiffs' motion to compel discovery is **DENIED.**  This case is hereby **STAYED** pending the arbitration.  The parties shall provide a joint status update concerning the progress of the arbitration on February 1, 2026 and every three months thereafter until the arbitration is resolved.  The parties shall also promptly notify the Court when the arbitration is concluded or the parties have reached a settlement.

**SO ORDERED.**

Dated:  New York, New York
        December 10, 2025

_____
GARY STEIN
United States Magistrate Judge